**Ernestine KEY, Plaintiff–Appellee,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellant.**

No. 89–3792.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1991.

Decided Feb. 26, 1991.

---

Hannah C. Dugan, Legal Action of Wisconsin, Milwaukee, Wis., for plaintiff-appellee.

John E. Fryatt, U.S. Atty., Stephen J. Liccione, Asst. U.S. Atty., Milwaukee, Wis., Donna Morros Weinstein, Gary A. Sultz, Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, WOOD, Jr., and CUDAHY, Circuit Judges.

BAUER, Chief Judge.

For the past seven years, Ernestine Key's disability claim case has inched its way through hearings and appeals, and back again. She has yet to receive any money. Key has held several types of jobs during her life. She was a grocery store cashier from 1967 to 1972, and between 1976 and 1978, she worked as an audit clerk and as an assembler in the manufacturing industry. Since April 14, 1980, Key has been treated for various ailments in her neck, left arm, back, and knees. On February 15, 1984, she filed an application for Supplemental Security Income ("SSI") alleging that she had become disabled in August 1983, due to scoliosis and arthritis. The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). The Secretary of Health and Human Services ("Secretary") uses a five-step sequential inquiry to determine whether a person is disabled and therefore entitled to benefits. Step four of the inquiry states that "[i]f an individual is capable of performing work he or she has done in the past, a finding of 'not disabled' must be made." 20 C.F.R. 416.920(e).

After Key's application and subsequent request for reconsideration were denied, she requested and received an evidentiary hearing before Administrative Law Judge ("ALJ") Gerald V. Kortsch in July 1984. In a recommended decision issued November 13, 1984, Kortsch concluded that Key was not disabled within the meaning of the Act. He found that she had the capacity to do her "past relevant" work of assembler. In Social Security jargon, the ability to engage in physical activity despite limitations is known as "residual functional capacity." "Past relevant work" is "work performed within the past fifteen years, which lasted long enough for the claimant to learn how to do it, and which was substantial gainful employment." 20 C.F.R. § 416.965(a). Among Kortsch's findings was that Key had the residual functional capacity of performing only sedentary work, and that "net work as an assembler did not require the performance of work related activities which were other than sedentary." Record [hereinafter "R."] at 12. The Social Security Appeals Council denied Key's request for review, and the ALJ's recommended decision became the Secretary's final decision. Key appealed in federal court.

On September 16, 1986, a federal magistrate issued a decision and order. The magistrate reviewed the ALJ's conclusion that Key could perform no more than sedentary work and characterized the statement that assembler work was sedentary as "conclusory." *Key v. Sullivan,* No. 85–C–0699, slip op. at 8 (E.D.Wis. Sept. 16, 1986). According to the magistrate, "the ALJ failed to define the physical exertion required of an assembler" and make a finding as to the physical and mental demands of Key's past job and a comparison with her present capabilities. *Id.* The ALJ's recommended decision was flawed in another aspect as well. Without articulating why, the ALJ credited a medical report regarding the source of Key's pain over objective x-ray evidence of cervical and lumbosacral spine problems and knee abnormalities. Also, with her motion for summary judgment in the district court,

Key had submitted new evidence that could shed further light on the requirements of her past relevant work and the nature of her impairment. Accordingly, the district court held in abeyance the parties' motions for summary judgment, and remanded the matter to the Secretary to remedy the deficiencies in the ALJ's recommended decision and to consider Key's new evidence.

On remand, the case again was assigned to ALJ Kortsch, who conducted a supplemental hearing on June 11, 1987. This time, Kortsch concluded that the medical evidence indicated that Key had been disabled since July 5, 1983, and that her medical problems precluded even sedentary work. His July 24, 1987, recommended decision was based on findings that Key suffered from degenerative joint disease, cervical radiculopathy, mechanical low back pain, and significant anxiety. R. at 295. The Appeals Council did not adopt this recommended decision as the final decision of the Secretary. In an October 15, 1987, order, it stated that it found "no evidentiary support for the Administrative Law Judge's conclusion that the claimant's combination of exertional and non-exertional impairments precluded the performance of all work activity." R. at 298. The Council, therefore, withheld its final decision and remanded the claim for yet another proceeding in which the ALJ was directed to obtain a consultative psychiatric examination and a medical assessment.

A new ALJ, Ronald G. Bernoski, conducted a third hearing, during which he received a mental status evaluation from a psychologist that indicated that Key had a moderate restriction of her daily activities and social functioning. The ALJ posed hypothetical questions to a vocational expert to determine whether Key could perform gainful work within each of her various physical limitations. The expert offered his opinion that Key could perform gainful work within each limitation, and that these limitations would not prevent Key from doing the audit clerk, cashier, or light assembly jobs she had performed in the past. Based in large part upon this testimony, Bernoski concluded in his June 22, 1988, recommended decision that Key

was not disabled. Specifically, he found that "the claimant is able to perform the parts of her past work which include sedentary to light cashier work," and that she is capable of other, semi-skilled sedentary jobs using skills from her past cashier work. R. at 150–51. On December 29, 1988, the Appeals Council adopted ALJ Bernoski's recommended decision as the final decision of the Secretary.

Key again sought judicial review. On August 16, 1989, the district court entered a magistrate's memorandum and order granting Key's motion for summary judgment of reversal and ordering entry of judgment finding Key disabled as of July 5, 1983. *Key v. Sullivan*, No. 85-C-0699, slip op. at 8 (E.D.Wis. Aug. 16, 1989). The court indicated that ALJ Bernoski's conclusion that Key could perform certain light work, including parts of her past light cashier work, contradicted the Secretary's earlier decision that Key was limited to performing only certain sedentary tasks. Moreover, the remand order had limited the Secretary to a determination of whether Key's past assembler job was sedentary in nature. Instead, the ALJ on remand found that Key could perform certain light work tasks, including her past job as cashier. Thus, the court concluded, "The Secretary's prior determination that the plaintiff's past relevant work was that of bench assembly was one which was implicitly affirmed upon judicial review by this court and, therefore, under the 'law of the case' doctrine was not subject to redetermination." *Id.* at 6. Deciding that the Secretary had "improperly redefined" Key's past relevant work and that there had been no finding that her skills from bench assembly work would transfer to other tasks, the court reversed the Secretary's final decision and found Key disabled. *Id.* at 8. It is from this judgment that the Secretary now appeals.

As a threshold matter, Key raises for the first time in this appeal a potential jurisdictional defect with respect to the Appeals Council's assumption of jurisdiction pursuant to the district court remand order of

September 16, 1986. A regulation governing SSI cases states:

> Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address.

20 C.F.R. § 416.1469. Key posits that because the Council assumed jurisdiction eighty-three days after ALJ Kortsch's July 24, 1987, recommended decision, its assumption of jurisdiction was untimely. Therefore, she argues, the July 24, 1987, recommended decision was the final decision of the Secretary for purposes of this appeal.

Key's argument does not take account of the fact that the ALJ made only a recommended decision. The regulations provide that "if a federal district court remands a case to the Appeals Council, and the Appeals Council remands the case to an [ALJ], the case must be returned to the Appeals Council with a recommended decision." 20 C.F.R. § 416.1453(c). Section 416.1477(a) of 20 C.F.R. states that "[t]he Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision." Similarly, 20 C.F.R. § 416.1479 says, "The Appeals Council may affirm, modify or reverse the hearing decision or it may adopt, modify or reject a recommended decision." Under these regulations, the ultimate authority for issuing a final decision rests with the Appeals Council. A recommended decision never becomes final and binding unless and until it expressly is adopted by the Council. Although the regulations provide that the Appeals Council may decide to review the action sua sponte "anytime within 60 days," the regulations do not specify a time period within which the Council must adopt, modify, or reject a recommended decision. *Reagan v. Secretary of Health and Human Services*, 877 F.2d 123, 125 (1st Cir.1989). In addition, in *Heckler v. Day*, the United States Supreme Court rejected the notion that courts should hold the Secretary to rigid deadlines on the ground that the quality and uniformity of agency decisions would suffer. 467 U.S. 104, 119, 104 S.Ct. 2249, 2257, 81 L.Ed.2d 88 (1984). Thus, Key's jurisdictional argument is without merit. A recommended decision is not transformed into a final decision merely because the sixty-day time limit has expired.

We turn now to the law of the case issue. The doctrine is based "on the salutary and sound public policy that litigation should come to an end." *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967). The gist of the doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case. This consistency protects parties "from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). The law of the case doctrine has been applied to administrative agency proceedings. 1B J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 0.403 (2d ed. 1985). Like most rules, the law of the case has its exceptions. Previously decided determinations are not applied if there are reasons rendering the doctrine inapplicable. These would include "(1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Chicago & North Western Transportation Co. v. United States*, 574 F.2d 926, 930 (7th Cir.1978).

Key believes that the Secretary violated the law of the case in two ways. First, after having determined in 1985 that Key's residual functional capacity was no greater than "sedentary," the Secretary in 1988 enlarged Key's residual functional capacity to "sedentary to light" without new evidence that her condition had improved. Second, although Key's past relevant work

history initially was determined to be the assembler job, it later was redetermined to include other jobs. The Government's response to the latter argument is that the Secretary never made a finding that Key's only past relevant job was as an assembler. Therefore, on remand, the Secretary properly evaluated whether Key could perform other past relevant work as well as other work in the national economy.

On more than one level, this case is, as Yogi Berra purportedly said, "deja vu all over again." In *Angevine v. Sullivan*, 881 F.2d 519 (7th Cir.1989), we faced a similar law of the case problem in the context of a claim for disability benefits. There, a claimant argued that the Appeals Council exceeded the narrow scope of the district court's remand, improperly recharacterizing her residual functional capacity as capable of performing light work rather than sedentary work, as originally determined by an ALJ. *Id.* at 521. We stated that "issues previously decided, either explicitly or by necessary implication, become the law of the case and such determinations are to be applied absent unusual or compelling reasons." *Id.* We stressed that the question of whether the Secretary violated the law of the case on remand is best answered by carefully considering the scope of the district court's remand order. *Id.* at 522. The reason for this examination is that the law of the case doctrine comes into play only with respect to issues previously determined. The doctrine "most often applies to issues already fully decided in cases that subsequently re-appear before the rendering court." *The Trustees of Indiana University v. The Aetna Casualty & Surety Co.*, 920 F.2d 429, 435 (7th Cir.1990). If an issue is left open after remand, the lower tribunal is free to decide it. *See generally* C. Wright, A. Miller, E. Cooper, 18 Federal Practice & Procedure § 4478 (1981).

■ To determine which issues were left open in this case, a bit of retracing is in order. In his November 13, 1984, recommended decision, ALJ Kortsch found that Key's past relevant work was that of bench assembly, and that this work required only

sedentary activities. This finding became part of the final decision of the Secretary. Apparently, the district court reached the same conclusion about Key's past relevant work, because it stated that "the ALJ failed to define the physical exertion required of an *assembler.*" *Key v. Sullivan*, slip op. at 9 (E.D.Wis. Sept. 16, 1986). (Emphasis provided). In the language of *Angevine*, the district court "explicitly or by necessary implication," 881 F.2d at 521, affirmed the Secretary's prior determination that Key's past relevant work was that of assembler. The whole point of the remand was to allow the Secretary to make a finding as to the physical and mental demands of the assembler job in relation to Key's present capabilities. After ALJ Kortsch found that Key's present capabilities would not allow her to perform her past assembly job, the inquiry was expanded to evaluate whether she could perform any other past relevant work or other work in the national economy. By then, Key's past relevant work and her residual functional capacity were not open issues, and the Secretary was not free to disregard the narrow remand directions of the district court. There were no unusual or compelling reasons cautioning against application of the law of the case doctrine, and none of exceptions noted in *North Western Transportation* applied. The Secretary clearly exceeded the scope of the remand order, and violated the law of the case.

■ Even if Key's past relevant work had not been redefined improperly, the Secretary's decision that Key was not disabled cannot stand. When reviewing disability claims, we affirm the Secretary's decisions if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). *See also Scott v. Sullivan*, 898 F.2d 519 (7th Cir.1990) (citing *Walker v. Bowen*, 834 F.2d 635, 639 (7th Cir.1987)). Substantial evidence has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In its December 29, 1994, decision adopting ALJ Bernoski's recommended decision, the Appeals Council took

note of the medical evidence in the record that Key "could not work in any situation requiring prolonged sitting, standing, lifting, looking up or carrying significant weight," and other evidence of problems with Key's cervical spine, low back, and knees. R. at 135. At the time of the ALJ's recommended decision, Key was fifty-two years old. Conceding that, although "the claimant may not be able to perform her past jobs as an audit clerk or cashier as she described them," the Appeals Council nevertheless agreed with ALJ Bernoski's finding that Key could perform a full range of sedentary work and a limited range of light work, and that she is able to perform the parts of her past work, which include sedentary to light cashier work, as well as semi-skilled sedentary jobs using skills from her past cashier work. R. at 136.

██ The evidence in the record strongly suggests that the greatest residual functional capacity Key has is "sedentary," not "light." Sedentary work never involves lifting more than ten pounds, and requires only occasional walking or sitting. 20 C.F.R. § 416.967(a). In contrast, light work involves lifting less than twenty pounds, with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). If a job requires "a good deal" of standing or walking, even if there is little lifting or carrying, it is in the "light" category. A grocery store cashier's duties typically are light. The Department of Labor's Dictionary of Occupational Titles ("DOT") contains relevant information concerning various types of work, as well as detailed descriptions of the skills and tasks involved in most jobs in the economy. Section 211.462–014 of the DOT states that, in addition to receiving and disbursing money and operating a cash register, retail cashiers stock shelves, mark prices on containers, weigh items, and bag merchandise. Everyday experience informs us that supermarket cashiers stand on their feet through most of their shifts, often while they are lifting and carrying heavy items and grocery bags. Although the medical evidence regarding Key's capabilities was conflicting, only one of the five physicians who examined her stated that

she has a lifting restriction of not more than twenty pounds. Every other examining physician placed her lifting restriction at no greater than ten pounds. Three of the five agreed that she has difficulty sitting for extended intervals. All five agreed that she is unable to stand for prolonged periods of time. It thus stands to reason that Key would be precluded from working as a cashier, either in a standing or sitting position. Despite this medical evidence, both ALJ Bernoski and the Appeals Council placed greater reliance upon the testimony of the vocational expert who appeared at the final administrative hearing. The vocational expert testified that cashier work typically is classified as "light, semi-skilled work." He was neither asked about, nor did he testify to, the job of cashier *as Key actually performed it.* The conclusion that Key is able to work as a cashier, therefore, was premature and unfounded.

██ The vocational expert also failed to testify that Key had in fact acquired skills that were transferable. The Social Security Administration has published rules explaining the concept of "transferability" and how it is used in disability evaluation. "Transferability" is defined as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs." SSR 1982(2)(b) (1979); *see also* 20 C.F.R. § 404.1568(d). According to the regulations, when transferability of skills is at issue, the ALJ is required to identify the acquired work skills, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ's recommended decision. SSR 1982(6). In his recommended decision, ALJ Bernoski referred only to the testimony of the vocational expert that Key has "past relevant sedentary to light semi-skilled work experience as an audit clerk, and cashier. She also has work experience as an unskilled light to medium machine operator, assembler and meat wrapper in a supermarket." R. at 150. Based upon this testimony, the ALJ concluded, and the Appeals Council concurred, that Key could

perform the parts of her past relevant work within her residual functional capacity, and that this translated into her ability to perform numerous jobs in the national economy, including billing clerk, billing machine operator, and payroll timekeeping clerk. We fail to see how a fifty-two (now fifty-five) year old woman with a tenth grade education who worked in a grocery store check out line for approximately five years, and then held two jobs for a few months, could be characterized as having transferable work skills to jobs "in existence in significant numbers in the economy." R. at 151. Nowhere in his recommended decision does ALJ Bernoski identify work skills *actually acquired* by Key that would enable her to perform as he indicated, given her residual functional capacity and work experience.

■ Because there is substantial evidence that Key is "unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," we conclude that she is disabled under § 423(d)(1)(A) of the Act. The Secretary failed in his burden of proving by substantial evidence in the record that Key is not disabled and that she can perform parts of her past work as well as other jobs in the national economy. We agree with the district court that, after so many years of hearings, rehearings, and appeals, no useful purpose would be served by delaying Key's receipt of benefits. In conclusion, then, for the reasons stated above, the decision of the district court is AFFIRMED and the case is REMANDED with instruction to remand to the Secretary for an award of benefits. Key should receive, and receive immediately, the benefits to which she long has been entitled.

CUDAHY, *Circuit Judge*, concurring:

Although I join in the judgment and am in general accord with the majority's able analysis, I do not agree with what seems to me an overly confining view of the "law of the case" doctrine as applied to administrative proceedings. Agency adjudications are quasi-judicial but they need not necessarily partake of all the formalistic rigor that characterizes their courtroom counterparts. The Secretary does not sit as an Article III judge presiding neutrally and relatively passively over adversary proceedings. Because the Secretary must actively execute certain statutory and policy mandates, his or her discretion should not be overly circumscribed by the rigid application of judicial doctrines. It is one thing to comply with explicit judicial commands on remand but quite another to narrow remanded proceedings, without direct instructions, to the specific course originally followed.

I think it incorrect to conclude that the district court "affirmed the Secretary's prior determination that Key's past relevant work was that of assembler." Assembler is indeed the occupation upon which the ALJ focused, at least initially, but neither the ALJ nor the district court found this work uniquely worthy of scrutiny to the exclusion of all others. The escalation from sedentary work to light work without new evidence, on the other hand, essentially seems to represent a changed finding—much less justifiable apparently than the shift in relevant work.

An administrative agency participates in the work of all three branches of government—the legislature, the executive and the judiciary. It occupies a unique and potentially creative position in our governmental structure. It is easy for lawyers—and judges—to fetter agencies by imposing upon them overly rigid judicial ways. I think we should avoid such a course by applying the law of the case doctrine to the work of agencies with great circumspection.