**Elmira HAUSER, Plaintiff,**

v.

**Shirley CHATER, Commissioner of Social Security Administration, Defendant.**

**No. 95–C–420.**

United States District Court, E.D. Wisconsin.

May 5, 1997.

Carol W. Plaisted, Mitchell Hagopian, Madison, for Plaintiff.

Matthew Richmond, Assistant U.S. Attorney, Milwaukee, for Defendant.

## DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

On April 21, 1995, Elmira Hauser commenced this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the Commissioner of Social Security's decision denying her application for supplemental security income [hereinafter "SSI"]. This case was randomly assigned to this court and the parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c)(1). Jurisdiction is proper based upon the existence of federal questions. 28 U.S.C. § 1331. Venue is proper in the Eastern District of Wisconsin. Currently pending are the parties' respective briefs in support of reversing and in support of affirming the Commissioner's decision.

## I. BACKGROUND

The following constitutes a brief review of the relevant facts. In 1942, the plaintiff purchased a $1,000 whole life insurance policy from the Aid Association for Lutherans [hereinafter "AAL"]. (Tr. 28). On June 8, 1993, Hauser applied for SSI. Under the Social Security Act, every aged, blind or disabled person who is eligible on the basis of her income and resources is entitled to SSI. 42 U.S.C. § 1381a. An "eligible individual," for those persons who do not have an eligible spouse, is defined as one whose resources, other than those resources excluded under 42 U.S.C. § 1382b(a), are less than $2,000. 42 U.S.C. §§ 1382(a)(1)(B)(ii), (3)(B).

Hauser stated on her SSI application that her resources included a life insurance policy with a face value of $1,000, a checking account which contained approximately $2,000, and a burial contract which was worth approximately $2,000. (Tr. 16, 18). Also in June, 1993, the insurer issued a statement to the plaintiff clarifying that the face value of her policy was $1,000 and the current cash surrender value of the policy was $2740.05;

$1,917.62 of which was the value of all dividend accumulations that were not yet paid to the insured, and $822.43 of which was the "cash value" of the policy. (Tr. 28–29, 63).

Hauser's initial application for SSI was denied on June 22, 1993 because the Social Security Administration found that she had resources worth more then $2,000. (Tr. 32). Hauser timely requested reconsideration, which was denied on August 26, 1993. (Tr. 36–39). Hauser then requested a hearing before an Administrative Law Judge [hereinafter "ALJ"]. The hearing was not held, because on November 23, 1993, ALJ Robert Bartelt found that the face value of the policy was only $1000 and should not be included among the resources used to calculate the plaintiff's eligibility for SSI. (Tr. 50–53). In reaching his conclusion, the ALJ concentrated on the regulations defining total face value, notwithstanding the definition of cash surrender value in the regulations. (Tr. 51).

Upon the Appeals Council's own motion, it decided to review the ALJ's decision and held the record open for an additional period of time in order for the submission of additional evidence; specifically, a questionnaire completed by a representative from the AAL. On April 18, 1994, the Appeals Council vacated the ALJ's November 23 decision stating that it did not believe the present record warranted a finding that the accumulated dividends were excludable from the definition of resources. It remanded the case, directing the ALJ to determine whether: 1) Hauser was able to receive the accumulated dividends without canceling her policy; and 2) whether Houser was able to receive the cash value without canceling her policy. (Tr. 65–16).

Janet Shriner, the senior certificate service representative for AAL, stated that the plaintiff could receive accumulated dividends without canceling her policy; and that if the total cash value were released, the policy would be terminated, unless the release of the cash value was taken as a loan. (Tr. 67). On July 15, 1994, ALJ Bertelt again issued a decision fully favorable to Hauser. The ALJ stated that, regardless of the questions posed by the Appeals Council, the regulations direct the inquiry to the "face value" of the policy. (Tr. 76). The ALJ found that because the face value of the plaintiff's life insurance policy was less than $1,500, no part of the policy's cash surrender value should be considered a "resource, including dividend accumulations." (Tr. 73–78).

Not willing to accept the ALJ's decision, on September 13, 1994, the Appeals Council notified Hauser that it was again conducting its own review. On February 16, 1995, the Appeals Council issued its decision, which constitutes the Commissioner's final decision for purposes of this review, reversing ALJ Bartelt's July 15 decision. The Appeals Council held that the accumulated dividends are not an excludable resource under 20 C.F.R. § 416.1230 and the plaintiff was therefore not entitled to SSI. Furthermore, the Appeals Council found that, notwithstanding Hauser's life insurance policy, the plaintiff was not eligible for SSI because at the time of her application, "either the funds in the claimant's checking account alone, or the funds in her funeral trust account alone, exceeded the $2,000 resource limit, even considering the $1,500 burial fund exclusion of 20 C.F.R. § 416.1231(b)." (Tr. 6).

## II. ANALYSIS

Hauser presents two issues on appeal: 1) whether the Appeals Council erred when it found that dividend accumulations are not part of the cash surrender value of a whole life insurance policy; and 2) whether the Appeals Council erred when it found that Hauser's checking and irrevocable funeral trust accounts independently preclude Hauser from SSI eligibility.

### A. Standards of Review

The court reviews the Commissioner's final decision to assure that it is supported by substantial evidence. *Key v. Sullivan,* 925 F.2d 1056, 1061 (7th Cir.1991). When evaluating whether substantial evidence exists to support the Commissioner's decision, the court considers the relevant evidence that a reasonable person might accept as adequate to support a conclusion, taking into account anything in the record that fairly detracts from its weight. *Young v. Secretary of Health and Human Services,* 957

F.2d 386, 389 (7th Cir.1992). Substantial evidence may be something less than the greater weight or preponderance of the evidence; however, the reasons for rejecting particular evidence, if uncontradicted, must be clearly articulated. *Id.; Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987). Even if substantial evidence supports the Commissioner's findings, this court may reverse her decision if the ALJ or Appeals Council commits an error of law. *See Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989).

■ The Commissioner's interpretation of her own regulations must be given "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Green v. Shalala,* 51 F.3d 96, 100 (7th Cir.1995) (quoting *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994)). "[T]he court must defer to the Commissioner's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the [Commissioner's] intent at the time of the regulation's promulgation.'" *Id.* (quoting *Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. at 2386). While interpretive rules do not require notice and comment under the Administrative Procedure Act, "they also do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, ——, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995). Thus, "deference ... is not synonymous with acquiescence" and only requires the court to accept the agency's interpretation if it is reasonable. *Green,* 51 F.3d at 100.

**B. Dividend Accumulations**

■ As stated previously, 42 U.S.C. § 1382b(a) excludes specific resources for determining SSI eligibility. Among the resources excluded are certain benefits derived from insurance policies. The interpretive regulation states:

"In determining the resources of an individual ... life insurance owned by the individual ... will be considered to the extent of its cash surrender value. If, however, the total face value of all life insurance policies on any person does not exceed $1,500, no part of the cash surrender value of such life insurance will be taken into account in determining the resources of the individual."

20 C.F.R. § 416.1230(a).

"Face value" is defined as "the basic death benefit of the policy exclusive of dividend additions or additional amounts payable because of accidental death or under special provisions." § 416.1230(b)(6). "Cash surrender value" is "the amount which the insurer will pay ... upon cancellation of the policy before death of the insured or before maturity of the policy." § 416.1230(b)(7). In its interpretation of cash value, the Social Security Administration's Program Operation Manual System [hereinafter "POMS"] states that a policy's cash surrender value may be acquired by the owner of a policy "only by turning in for cancellation before it matures or the insured dies. A loan against a policy reduces its [cash surrender value]." (Defendant's brief in support of the Commissioner's decision, Ex. A at p. 1).

The regulations do not define either dividend additions or dividend accumulations, but do indicate that "dividend additions" are not to be considered when calculating face value. § 416.1230(b)(6). Not all policies pay dividends and those that do are not treated identically by all life insurance companies. Therefore, the Social Security Administration defined the terms dividend additions and dividend accumulations for its purposes. The POMS distinguishes between dividend additions and dividend accumulations. "Dividend additions" are defined as "amounts of insurance purchased with dividends and added to the policy, increasing its death benefit and [cash surrender value]." By contrast, "dividend accumulations" are "dividends that the policy owner has constructively received but left in the custody of the insurer to accumulate at interest, like money in a bank account. They are not a value of the policy per se; the owner can obtain them at any time without affecting the policy's [face value] or [cash surrender value]."

Because dividend accumulations are distinguished from dividend additions, the POMS

states that accumulations are not excludable resources: "Dividend accumulations cannot be excluded from resources under the life insurance exclusion, even if the policy that pays the accumulations is excluded from resources. Unless they can be excluded under another provision (e.g., as set aside for burial), they are a countable source." (*Id.* at p. 2).

In its decision, the Appeals Council noted that Hauser's insurer, AAL, distinguishes between the cash value of the policy and the policy's accumulated dividends because the claimant can exercise the option of receiving the accumulated dividends without cancelling the policy. In addition, the insurance company pays interest on the dividends but not on the actual cash value. Thus, according to the Appeals Council, "the cash value and the accumulated dividends, the sum of which the insurance company refers to as the policy's cash surrender value, are actually treated as separate and distinct entities, with the accumulated dividends not constituting an inseparable part of the policy." (Tr. 6). The Appeals Council held that only the actual cash value of Hauser's policy ($822.43) could be excluded from Hauser's total resources. Thus, the Appeals Council concluded that the accumulated dividends ($1,917.62 as of June 24, 1993) represent countable resources.

As indicated previously, when the total face value of all life insurance policies is less than $1,500, no part of the cash surrender value of the policy will be taken into account when determining an individual's resources. 42 U.S.C. § 1382b(a); 20 C.F.R. § 416.1230(a). The parties agree that the total face value of Hauser's policy was less than $1,500, but differ over the cash surrender value of the policy. This is important for if the definition of cash surrender value includes dividend accumulations, then the entire sum of accumulations is an excludable resource because the cash value of the policy is not taken into account when the policy's face value is less than $1,500. On the other hand, if dividend accumulations are distinct from the policy's cash surrender value, then the accumulations are a separate resource, distinct from the prior exclusion, and can be used in determining Hauser's SSI eligibility.

Essentially, the Commissioner requests the court to uphold her interpretation of her own regulations. The Appeals Council did not specifically refer to the Commissioner's interpretation as promulgated through the POMS. However, if the Commissioner's interpretation is not plainly erroneous nor inconsistent with the regulations, the Appeals Council's decision is supported by substantial evidence because the Appeals Council relied on the same reasoning as the POMS to conclude that dividend accumulations are not excludable resources.

The court concludes that the Commissioner's interpretation of "cash surrender value" is not plainly erroneous nor inconsistent with the regulations and therefore the Appeals Council's decision is supported by substantial evidence. The Commissioner's interpretation of "cash surrender value" is consistent with the language of the regulatory definition itself. The regulations define "cash surrender value" as "the amount which the insurer will pay *upon cancellation of the policy* before death of the insured or before maturity of the policy." 20 C.F.R. § 416.1231(b)(6) (emphasis added). Because dividend accumulations may be redeemed at any time without cancelling the policy, such funds are not necessarily paid "upon cancellation of the policy" and therefore do not fall within the regulatory definition of "cash surrender value."

The regulations impose a condition precedent to the term "cash surrender value" by including the term "will pay upon cancellation of the policy;" the only proceeds that constitute the policy's cash surrender value are those that may only be redeemed upon cancellation of the policy. Thus, the Commissioner's interpretation that dividend accumulations do not compose "cash surrender value" is consistent with the plain language of the regulations because dividend accumulations are not necessarily paid upon cancellation of the policy, whereas cash surrender value is the amount that "*will*" be paid upon cancellation.

The Commissioner's interpretation must also be read in the context of the 1972 amendments to the Social Security Act. The amendments created a national program to provide cash assistance to the needy, aged,

blind and disabled. However, the House of Representatives' Ways and Means Committee stated: "it is your committee's belief that, to the extent possible, contributory social insurance should continue to be relied on as the basic means of replacing earnings that have been lost as a result of old age, disability, or blindness." H.R. Rep. 92–231 (1972), *reprinted in* 1972 U.S.C.C.A.N. at 5132–33. Thus, the Commissioner's narrow interpretation of cash surrender value is consistent with the legislative intent to retain private insurance as the primary provider to the aged.

Although Hauser's insurer considers the "cash surrender value" to compromise the "cash value" as well as the "dividend accumulation," *see* (Tr. 60), the Commissioner is not bound by the insurer's definition of cash surrender value and must develop an interpretation that is uniform for all insurance policies, rather than relying on the insurer's definition of cash surrender value on a case-by-case basis. *See* H.R.Rep. No. 92–231 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4989, 4992 (Social Security amendments enacted to "have nationally uniform requirements for such eligibility factors as the level and type of resources allowed").

The plaintiff cites the regulatory definition of "face value," which explicitly excludes "dividend additions" from the calculation of face value. Hauser contends that had the Social Security Administration intended to exclude dividend accumulations from the calculation of cash surrender value, "it would have done so explicitly, just as it did when it defined face value." (Plaintiff's Brief at p. 7). This does not necessarily follow. As indicated earlier, since an insured can receive dividend accumulations prior to cancellation or death, the definition of cash value need not mention any payments not solely conditioned on cancellation or death such as accumulations.

Hauser also points to the fact that in the administrative record, the terms "dividend additions" and "dividend accumulations" are confused. For example, the Appeals Council defined the face value as the "basic death benefit of the policy exclusive of dividend *accumulations.*" (Tr. 5) (emphasis added). However, the Appeals Council's misuse of the term "dividend accumulation" is only rele-

vant to the extent that it reveals the Commissioner's interpretation to be plainly erroneous or inconsistent with the regulations. In this instance, the Appeals Council appears to have inadvertently confused or misused the terms, which does not shed light on the soundness of the Commissioner's interpretation. Moreover, the Appeals Council's use of the terms was with respect to "face value," which is not at issue in this case.

The court concludes that substantial evidence supports the Commissioner's decision that Hauser's accumulated dividends ($1,917.62 as of June 24, 1993 and $2,053.86 as of February 23, 1994) are not excludable resources. This puts Hauser over the resource limit. Because the Commissioner's decision in this regard provides an independent basis to deny the plaintiff's application for SSI benefits, and because the factual record with respect to the plaintiff's checking and funeral trust accounts was not fully developed, the court declines to address the Commissioner's decision as it pertains to the plaintiff's checking and funeral trust accounts.

**IT IS THEREFORE ORDERED** that the plaintiff's request to reverse the Commissioner's conclusion that dividend accumulations are not excludable resources is **denied**. The Commissioner's decision is **affirmed**. Judgment dismissing the plaintiff's complaint and this action should be entered.