In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-3233

ALLEN L. SURPRISE,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 18-cv-01432-WCG — **William C. Griesbach**, *Judge.*

ARGUED JUNE 3, 2020 — DECIDED JULY 29, 2020

Before SYKES, *Chief Judge*, and BAUER and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Allen Surprise appeals the denial of his claim for disability insurance benefits and supplemental social security income. The initial ALJ assigned to his case determined that Surprise's residual functional capacity ("RFC") included a limitation regarding fine manipulation, but nevertheless concluded that Surprise was not entitled to benefits.

Surprise challenged this decision in the United States District Court for the Eastern District of Wisconsin, which twice remanded the matter: once because the transcript of the vocational expert's testimony was incomplete and once in response to a stipulation from the parties. Surprise contests two aspects of the decision the second ALJ made upon remand: (1) that she failed to adequately account for a portion of the medical expert's opinion in the hypothetical question posed to the vocational expert, and (2) that her decision violated the law of the case doctrine by failing to adopt the fine manipulation limitation the initial ALJ found in the course of his RFC assessment. Surprise, however, has not identified any obvious conflict between the hypothetical question and the Dictionary of Occupational Titles ("DOT"), nor did the district court make any factual findings that became the law of the case when it entered its remand orders. We therefore affirm.

## I. Background

### A. Factual Background

Surprise injured a tendon in the middle finger of his right hand in January 2009, resulting in two surgeries and several months of physical therapy. He initially experienced severe pain, "so severe it often ma[de] him nauseous." At various points, though, Surprise showed some improvement. In April 2009, for example, Surprise's therapist noted that his pain had decreased significantly, and that therapy was no longer necessary as he could open soda cans and use a coffee cup with his right hand.[1]

---

[1] The record and Surprise's opening brief describe back pain and left-hand weakness as additional physical limitations. As Surprise does not

Surprise also suffered a concussion, resulting in post-concussion syndrome, in a 2000 snowmobile accident. In November 2009, Dr. Sandra King, Ph.D., a psychologist, noted Surprise could not read well, could follow only a simple, three-step command, and had poor short-term memory and a limited knowledge base. Surprise also experiences depression and anxiety, although his doctors noted that medications kept these conditions under control.

### B. Procedural Background

In May 2012, Surprise had a hearing before ALJ Patrick J. Toal. When determining Surprise's RFC, ALJ Toal identified physical limitations regarding frequent overhead reaching and occasional fine manipulation. ALJ Toal nevertheless denied Surprise's claims. Surprise requested a review of this decision by the Appeals Council, but the Council denied that request.

Surprise challenged this decision in the district court. In November 2014, the district court remanded because some of the vocational expert's testimony was inaudible, and the hearing transcript thus omitted critical information. Accordingly, in April 2016, ALJ Toal presided over a second hearing with vocational testimony. After this hearing, ALJ Toal again denied Surprise's claims but considered the same physical limitations—those involving overhead reaching and fine manipulation—when assessing Surprise's RFC.

Surprise refiled his action in the district court, but the parties soon agreed to a stipulated remand. Thus, in March 2017,

---

challenge any aspects of the ALJ or the district court's decisions regarding these ailments, though, we do not discuss them further.

the district court issued an order, simply stating, "On judicial remand, the Commissioner will offer Plaintiff the opportunity to submit additional evidence and to have a hearing, and issue a new decision." As with all remands, this matter returned to the Appeals Council, which subsequently remanded to the ALJ with directions to further evaluate the opinion of medical expert Dr. James Wargel, Ph.D., and reassess Surprise's mental RFC. 20 C.F.R. §§ 404.983, 416.1483.

### 1. *Hearing before ALJ O'Grady*

ALJ Margaret J. O'Grady, the newly assigned ALJ, held a third hearing in March 2018. At that hearing, Dr. Wargel testified that Surprise could "perform work involving simple, noncomplex, routine, repetitive, type of instructions." When Surprise's counsel asked Dr. Wargel to clarify what he meant by "simple instructions," Dr. Wargel defined them as "[d]irect, one or two steps or three steps that can be easily followed." In Surprise's case, Dr. Wargel explained, "verbal instructions or demonstration is necessary."

Bob Hammond, a vocational expert, followed Dr. Wargel. ALJ O'Grady began by telling Mr. Hammond she would assume his testimony was consistent with the DOT unless Mr. Hammond indicated otherwise (which he never did). ALJ O'Grady then asked Mr. Hammond whether work was available for a hypothetical individual who, among other things, "would be able to perform work that's considered routine, repetitive, noncomplex, simple, noncomplex-type of instructions." Mr. Hammond identified two light-work jobs that met all of ALJ O'Grady's proposed criteria: a press operator, DOT 614.685-014, of which he said there were 127,000 positions nationally, and an injection molder, DOT 556.685-038, of which he said there were 121,000 positions nationally.

Counsel for Surprise then asked Mr. Hammond to identify jobs with a General Educational Development ("GED") "reasoning level of 1," instead of using the terms "routine, non-complex, simple, and repetitive." He noted his client, with a limitation to instructions of "one to three steps," would fall somewhere between levels 1 and 2. Mr. Hammond noted that it was difficult for him to answer this question because, while the DOT discusses "one, two, and three step operations," it does "not describe exactly what a step is." He explained that no jobs that he had identified required only level 1 in each of the three GED categories—math, language, and reasoning. The press operator, for example, had language and math levels of 1 and a reasoning level of 2.

### 2.  *ALJ O'Grady's Decision*

ALJ O'Grady concluded that Surprise was not disabled, using the five-step sequential disability adjudication process outlined in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, at step one, she concluded that Surprise had not engaged in substantial gainful activity since his March 10, 2008, onset date. She concluded at step two that Surprise's tendon injury to his right middle finger was a non-severe impairment. At step three, ALJ O'Grady determined that Surprise did not have an impairment that meets or medically equals the severity of one of the impairments listed in the relevant appendix.

When assessing Surprise's RFC—his ability to perform work-related activities despite his limitations, as required by 20 C.F.R. §§ 404.1520(e), 416.920(e)—ALJ O'Grady determined that, among other things, he was limited to light work with "no more than frequent overhead reaching." She omitted, however, the limitation to occasional fine manipulation that ALJ Toal had previously included. Regarding Surprise's

mental limitations, she found that Surprise "can perform routine, repetitive tasks and follow simple, non-complex instructions." She gave Dr. Wargel's opinion "great weight" and considered all of his findings in her decision.

At step four, ALJ O'Grady determined that, although Surprise was unable to perform his past work, he remained capable of working as a press operator or injection molder. As a result, at step five, ALJ O'Grady announced that Surprise was not disabled.

Surprise contested this decision in the district court. The district court upheld the ALJ's decision, concluding that the ALJ did not err by limiting Surprise to routine, repetitive, non-complex work involving simple instructions, and that her decision did not violate the law of the case doctrine by omitting from the RFC assessment the limitation to occasional fine manipulation that ALJ Toal had previously included. Surprise now appeals the district court's decision.

## II. Discussion

We review the district court's decision de novo and will uphold the decision of the Commissioner of Social Security if the ALJ applied the correct legal standards and supported her decision with substantial evidence. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### A. Consideration of Dr. Wargel's Opinion

Surprise takes issue with the ALJ's failure to cite Dr. Wargel's specific testimony about one- to three-step

instructions in her decision. ALJ O'Grady formulated Surprise's capabilities by explaining that Surprise "can perform routine, repetitive tasks and follow simple, non-complex instructions." We uphold RFC determinations like the one here—confining a claimant to "routine tasks and limited interactions with others"—"when they adequately account for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Surprise argues, however, that Dr. Wargel's testimony demonstrated an obvious conflict between the DOT and Mr. Hammond's testimony, and ALJ O'Grady should have resolved this conflict. We conclude there is no conflict, obvious or otherwise.

Surprise highlights that Dr. Wargel defined "simple instructions" as involving "one or two steps or three steps." He compares this to Mr. Hammond's testimony that a limitation to one- to three-step instructions would fall somewhere between reasoning levels 1 and 2 under the GED assessment. These two reasoning levels involve, respectively:

- Level 1: "Apply[ing] commonsense understanding to carry out simple one- or two-step instructions. Deal[ing] with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT App. C.

- Level 2: "Apply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal[ing] with problems involving a few concrete variables in or from standardized situations." *Id.*

Surprise contends that the occupations ALJ O'Grady cited fell outside his capabilities, as they all require a reasoning level 2

assessment. Thus, according to Surprise, these occupations exceed the limitations Dr. Wargel announced.

Social Security Ruling ("SSR") 00-4p imposes an affirmative obligation on ALJs to ask vocational experts whether their testimony is consistent with the information in the DOT. SSR 00-4p. Here, ALJ O'Grady asked Mr. Hammond to note any instances in which his testimony conflicted with the DOT, and he noted none. In addition, SSR 00-4p requires the ALJ to investigate and resolve apparent conflicts between vocational experts and the DOT. *Id.* Because Surprise did not identify any apparent conflicts at the time of hearing, he now must demonstrate "that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

Surprise has not identified any conflict between a one- to three-step instruction limitation and a job requiring reasoning level 2, let alone an obvious one. As a preliminary matter, at least one of our sister circuits has determined a discrepancy between a simple-tasks limitation and the DOT reasoning levels—like the one presented here—"is not the type of actual or apparent conflict that necessitates a resolution under SSR 00-4p" because a vocational expert and the DOT may use different terminology. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014). But even assuming this sort of inconsistency could present an apparent conflict, Surprise has identified no authority saying that a one- to three-step instructions limitation is incompatible with reasoning level 2. Rather, courts have concluded only that a limitation to one- to *two-*step instructions disqualifies a claimant from occupations requiring this reasoning level. *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558–59 (8th Cir. 2018); *Henderson v.*

*Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). In fact, we have gone as far as to say that there is no apparent conflict between a simple tasks limitations and level 3 reasoning—a more demanding standard than level 2. *Sawyer v. Colvin*, 512 F. App'x 603, 610–11 (7th Cir. 2013).

*Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), the case on which Surprise relies to support his argument, does nothing to aid him. There, the Fourth Circuit concluded that an individual "limited to short, simple instructions[] may not be able to carry out detailed but uninvolved instructions." *Id.* at 314. But that case did not discuss instructions in terms of the number of steps involved, the pivotal consideration here.

## B. Law of the Case Doctrine

Surprise next argues that ALJ O'Grady erred by modifying his RFC to exclude the limitation on fine manipulation that ALJ Toal imposed. He contends that this modification violated the district court's remand orders and the law of the case doctrine.[2]

According to the law of the case doctrine, after "an appellate court either expressly or by necessary implication decides an issue, the decision [is] binding upon all subsequent proceedings in the same case." *Dobbs v. DePuy Orthopaedics, Inc.*,

---

[2] We have never decided whether the law of the case doctrine applies to previous findings not reviewed on appeal, such as "findings made by one ALJ that implicated issues reexamined by a second ALJ." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). Surprise, however, expressly limits his argument to any findings the district court made by virtue of its remand orders. We therefore need not decide today how the law of the case doctrine applies to the decisions of a prior ALJ.

885 F.3d 455, 458 (7th Cir. 2018) (quoting *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)). The law of the case doctrine thus requires a lower court "to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart." *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997). We apply the law of the case doctrine to judicial review of administrative decisions. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (citing *Key*, 925 F.2d at 1060). For the law of the case doctrine to come into play, the court must have first determined the particular issue, as an "[a]ctual decision of an issue is required to establish the law of the case." *United States v. Robinson*, 724 F.3d 878, 886 (7th Cir. 2013) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478 (3d ed. 2005)). "If an issue is left open after remand, the lower tribunal is free to decide it." *Key*, 925 F.2d at 1061; *see also Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (concluding that, where a district court did not make any determinations regarding the initial ALJ's assessment of the RFC, the newly-assigned ALJ was free to reassess the RFC on remand without violating the law of the case doctrine).

The district court twice remanded this matter—once in November 2014 and once in March 2017. The November 2014 order remanded for only one reason: because the record of the vocational expert's testimony was incomplete. The court did not make any findings regarding, or preserve any part of, ALJ Toal's reasoning. The March 2017 order similarly did not include any findings—either explicitly or implicitly—regarding Surprise's RFC: the district court merely entered the stipulated remand. As the district court did not make any

determinations regarding Surprise's RFC, these orders did not obligate ALJ O'Grady to adopt ALJ Toal's findings.

### III. Conclusion

For these reasons, we AFFIRM the judgment of the district court.