NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 3, 2021[*]
Decided June 11, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-2327

| | |
|---|---|
| SHAWN A. DENSOW,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br>    *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Eastern District of<br>Wisconsin.<br><br>No. 19-C-136<br><br>William C. Griesbach,<br>*Judge.* |

## O R D E R

Shawn Ann Densow, now 49 years old, applied for supplemental security income and disability insurance benefits based on her back pain. An administrative law judge denied her application, finding that she could still perform sedentary work with some limitations. The district court upheld that decision. Because substantial evidence supports the ALJ's conclusion, we affirm.

---

[*] We granted the parties' joint motion to waive oral argument. Thus, this appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2)(C), (f).

## I. Background

Densow, a mother of two with a G.E.D. diploma, applied for benefits in 2015, alleging that she became disabled more than three years earlier from back pain caused by two compressed disks. She previously held jobs as a waitress and front-desk clerk, and even worked after her onset date as a gas-station clerk and bartender until her back pain worsened further, forcing her to stop.

### A.     Treatment History

Densow is obese (5 feet, 3 inches, weighing 177 pounds) and has a long history of back troubles, beginning with a broken tailbone at age 18. In 2013, two car crashes and a fall later, she reported back pain registering "10 out of 10." Although an x-ray showed "mild narrowing" between disks in her lumbosacral joint (L5 to S1 vertebrae) and "degenerative changes" to the pubic joint, a physical exam by a nurse practitioner revealed mostly normal results—including full bilateral strength, no muscle tenderness, and a negative straight-leg test (which indicated no radiculopathy or underlying nerve-root sensitivity).

In mid-2015, after she injured herself by stepping into a hole, Densow described radiating back pain when she sat, stood, or bent over. Imaging showed mild scoliosis, an old compression fracture, fairly prominent degenerative disc-space loss, some disc bulging, and mild-to-moderate foraminal stenosis in her lumbosacral joint. But another physical exam revealed normal results, including a second negative straight-leg test. And though Densow reported difficulty with daily activities and worsening pain, her physical therapist observed mostly normal lumbar mechanics. Densow could garden, perform some chores, and shop, though she felt pain afterwards. An electromyography (EMG) showed no nerve damage in her lumbar spine.

Later in 2015, two agency doctors reviewed Densow's application for benefits. They agreed that Densow's impairments did not meet or equal Listing 1.04 (the relevant listing for per se spinal disorders) and that she could perform light work with some restrictions (e.g., lift ten pounds; and sit, stand, or walk up to six hours in a workday). *See* 20 C.F.R. §§ 404.1567(b), 416.967(b), 404 Subpt. P, App. 1, § 1.04 (2012).[1]

---

[1]  New regulations promulgated by the agency in 2021 no longer include Listing 1.04. But for claims like Densow's that were filed before April 2, 2021, the listing still applies. *See* 20 C.F.R. § 404 Subpt. P, App. 1, § 1.04 (2021).

In early 2017, neurosurgeon Phillip Yazbak operated on Densow's back, fusing her lumbosacral joint to try to relieve mounting pain caused by her "truly dramatic degenerative disk disease." After surgery, Karen Brazzale—a nurse practitioner in Dr. Yazbak's office—assessed Densow's motor strength as full, sensation as intact, and deep-tendon reflexes as normal. New EMG results and a nerve-condition study were also normal. But imaging still revealed disc degeneration, mild-to-moderate foraminal narrowing, partial effacement, and a mild compression fracture.

Soon after her surgery, Densow reported worsening pain radiating from her lower back to her left leg. In April, Nurse Brazzale recorded Densow's description of her symptoms as being "totally incapacitated at this time, and not able to work." Later that year, Densow saw a pain-management specialist, Dr. Michael Carl, who opined that she could work full time (sitting for 6 hours and standing for 2), but could sit or stand for only 20 minutes at a time, would likely need unscheduled breaks, and might be absent 2 days per month. Even though she displayed a positive seated and supine straight-leg test (indicating nerve damage), 20% limited range of motion in her lumbar spine, and paraspinal tenderness, Dr. Carl assessed a normal gait, independent sit to stand transfers, and full motor strength in both legs.

### B. Procedural History

At a hearing before an ALJ in late 2017, Densow testified that she suffers from "continuous" lower back pain, which she manages by lying down all day. Her spinal-fusion surgery provided little relief, she said, and she could stand for 20 minutes; sit for 30; lift between 5 and 10 pounds; do household tasks for about 15 minutes "on a good day;" drive to get groceries once a month; and walk about 100 yards for exercise. Counsel also asked to amend her onset date to June 2015, the date Densow injured herself by stepping into a hole. The ALJ gave counsel a form to amend the onset date, but counsel apparently never returned it (no completed form appears in the record).

A vocational expert then testified about the jobs available for a person with Densow's limitations—sedentary work with a 3-minute break every 30 minutes. Such a person, he opined, could perform Densow's past front-desk job and other work (callout operator, document preparer, and circuit board inspector), but not if she required two days off per month or was off task for 15% of the day.

Applying the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), the ALJ found Densow not disabled. He concluded that her lumbar degenerative disc disease, post-surgical back pain, mild compression fracture, and obesity were severe

impairments, but none of those impairments met or medically equaled Listing 1.04. Densow had the residual functional capacity to perform sedentary work with a 3-minute break every 30 minutes, so she could work at her past front-desk job and other jobs in the national economy.

In reaching his decision, the ALJ explained that he found Densow's statements about her activities of daily living "not entirely consistent" with the record. The ALJ gave little weight to Nurse Brazzale's letter and partial weight to the opinions of the agency consultants and Dr. Carl. But the ALJ determined that the record did not support the need for unscheduled breaks or absenteeism. The Appeals Council denied review.

The district court, in a detailed order, upheld the ALJ's decision. First, it determined substantial evidence supported the ALJ's conclusion that Densow's back pain did not meet or equal the listing criteria. Next, her subjective complaints did not outweigh the evidence supporting her residual functional capacity. And any mistake regarding the alleged onset date was harmless.

## II. Analysis

We directly review the ALJ's decision to ensure that it applies the correct legal standards and is supported by substantial evidence. *Surprise v. Saul*, 968 F.3d 658, 661 (7th Cir. 2020). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

### A. Step 3 Listing Determination

On appeal, Densow first argues that the ALJ did not sufficiently explain or support his determination that she did not meet or medically equal Listing 1.04A for spinal disorders. The ALJ, she says, ignored multiple references in the record to weakness, numbness, and tingling in her leg, a positive straight-leg test, and her specific spinal disorders.

To satisfy Listing 1.04A, Densow needed to meet certain criteria, including pain from a compromised nerve root, limited spine movement, motor loss with sensory or reflex loss, and a positive straight-leg test. *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021). The ALJ, meanwhile, had to discuss Listing 1.04 and "offer more than a

perfunctory analysis." *Jeske v. Saul*, 955 F.3d 583, 588–90 (7th Cir. 2020) (omitting citation).

But the ALJ sufficiently explained his conclusion that Densow did not meet or equal Listing 1.04. The ALJ, at step 3, negated one criterion from each subsection: the record did not support "the requisite motor and sensory deficits," *see* § 1.04A, "spinal arachnoiditis" (an inflammation of membrane surrounding the spinal cord), *see* § 1.04B, or "spinal stenosis resulting in pseudoclaudication" (space between vertebrae causing difficulty ambulating), *see* § 1.04C. The ALJ then summarized the record and cited ample evidence that Densow did not have the requisite motor and sensory deficits: (1) a physical exam in 2013 that revealed full bilateral strength and a negative straight-leg test; (2) a doctor assessment in 2015 that she had "full motor strength bilaterally with normal tone, intact deep tendon reflexes, intact bilateral sensation and coordination … and steady gate"; (3) Nurse Brazzale's post-surgical statement in 2017 that despite Densow's complaints of "radicular pain, numbness, and tingling," she "demonstrated full and equal lower extremity strength bilaterally with intact sensation and deep tendon reflexes"; and (4) Dr. Carl's observation that despite performing "a positive straight leg raise," she also displayed "full lower extremity motor strength" and normal walking.

Densow further contends that the ALJ did not meaningfully consider how her obesity exacerbated her spinal issues to equal Listing 1.04. But the ALJ did, in fact, state that he "considered the exacerbating impact of this claimant's obese state." He placed her in the "Level 1 obesity category" (body mass index between 30.0 and 34.9), and then formulated her sit/stand limitation based, in part, on her placement in that category. Densow does not point to any medical evidence, nor does the record reflect, that she suffers from limitations based on her obesity. *See, e.g., Brown v. Colvin*, 845 F.3d 247, 252–53 (7th Cir. 2016).

## B. Step 4 Residual Functional Capacity Analysis

Densow next argues that the ALJ cherrypicked facts when he assessed her residual functional capacity—that she could perform sedentary work with a 3-minute break after 30 minutes of sitting, standing, or walking. She argues, for instance, that the ALJ made too much of her ability to perform basic activities of daily life—including gardening, doing chores, and shopping. She also points generally to her declining post-surgical condition, her testimony that she could stand for only 20 minutes, Brazzale's report that she was "totally incapacitated and unable to work," and Dr. Carl's

assessment that she could sit or stand for 20 minutes, would need unscheduled breaks, and might be absent two days a month.

The ALJ, however, did not impermissibly equate those activities to full-time work. He addressed Densow's activities in the context of assessing whether her symptoms were as limiting as she alleged. *See Jeske*, 955 F.3d at 592–93; *see also* 20 C.F.R. § 404.1529(a), (c)(3). And in considering her activities, the ALJ found that "her pain symptoms were not wholly debilitating."

In any case, substantial evidence supports the ALJ's assessment of Densow's residual functional capacity. *See Alvarado v. Colvin*, 836 F.3d 744, 750–51 (7th Cir. 2016). Agreeing with Densow that her spinal impairments worsened after her surgery, he tailored his assessment of her residual functional capacity to support "less than a full range of sedentary exertion." Questioning her assertion of incapacitation, he highlighted evidence in the record of her functionality: (1) a physical exam in 2013 revealed full bilateral strength, no paraspinal muscle tenderness, and a negative straight-leg raise; (2) a doctor's 2015 assessment of "full motor strength bilaterally with normal tone, intact deep tendon reflexes, intact bilateral sensation and coordination … and steady gate;" (3) the observations of her physical therapist that, despite Densow's reports of increased pain, she had normal lumbar mechanics "without provocation of increasing pain or symptoms;" (4) a post-surgical report from Dr. Carl that she had "full and equal lower extremity strength bilaterally with intact sensation and deep tendon reflexes;" and (5) Densow's hearing testimony that she could sit for 30 minutes. The residual functional capacity assessment was consistent with the medical opinions that the ALJ credited. The ALJ also adopted "similar postural limitations" to the opinions of the agency's doctors and agreed with Dr. Carl that Densow "could work 8 hours per day, 40 hours per week while standing 2 hours, sitting 6 hours."

## C. Amended Alleged Onset Date

Finally, Densow contends that the ALJ erred by not amending the onset date from July 2012 to June 2015. But as the district court noted, even if this were error, any error would be harmless because the evidence of her condition after June 2015 still supported the ALJ's determination. The ALJ referred to multiple physical examinations (and medical assessments) in 2015 and 2017 showing that Densow had full bilateral motor strength and sensation, deep tendon reflexes, normal EMG results, and appropriate lumbar mechanics despite her reported pain. The ALJ appropriately

concluded that Densow had not established a disability from the onset date alleged "through the date of this decision" (e.g., May 2018), and Densow has not identified any evidence not considered by the ALJ that would have changed the outcome. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

Accordingly, we uphold the ALJ's decision.