In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2122

MELISSA L. VARGA,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:12-cv-1102 — **William C. Griesbach**, *Chief Judge.*

ARGUED DECEMBER 12, 2014 — DECIDED JULY 24, 2015

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Melissa Varga suffers from a combination of physical and mental impairments, including post-traumatic stress disorder, endometriosis, major depression, irritable bowel syndrome, and fibromyalgia. As a result, she applied for disability insurance benefits, but an Administrative Law Judge ("ALJ") denied her application. Varga sought review in the district court, which affirmed the

decision of the ALJ. Varga appeals, arguing the ALJ erred by failing to include her mental limitations in the areas of concentration, persistence, and pace in the hypothetical question that he posed to the vocational expert. She contends the flawed hypothetical led the vocational expert and the ALJ to erroneously conclude she was not disabled. We agree that the hypothetical was fatally flawed. We therefore reverse the judgment of the district court and remand to the agency for further proceedings.

## I. BACKGROUND

Melissa Varga, who is presently forty-two, applied for disability insurance benefits in July 2006, alleging she had been disabled since December 2005. Prior to this, Varga served in the Army. She received a medical discharge from the military in 1994 because of her severe endometriosis (a condition which causes pelvic pain). She then worked as a correctional officer, and later an office worker, at the Federal Correctional Institute (FCI) in Oxford, Wisconsin. She left the FCI in 2005 because of her continuing physical and mental impairments. Varga has not worked since March 2006, when her application for disability retirement under the Federal Employees Retirement System was approved.

Between 2005 and 2011, Varga's condition was assessed by an array of medical professionals in connection with her attempts to obtain disability benefits. She was diagnosed with a combination of debilitating conditions, including post-traumatic stress disorder, endometriosis, major depression, irritable bowel syndrome, and fibromyalgia (a chronic muscle pain disorder). While Varga's medical history is lengthy, we limit our review here to the one medical assessment relevant to her appeal.

In August 2006, Dr. Roger Rattan, a state agency psychological consultant, reviewed Varga's medical records and completed two forms regarding her condition: the Psychiatric Review Technique (PRT) form and the Mental Residual Functional Capacity Assessment (MRFCA) form. On the PRT form, Dr. Rattan noted that Varga had a moderate restriction in activities of daily living, mild difficulties in maintaining social functioning, and—of particular relevance to this appeal—moderate difficulties in maintaining "concentration, persistence, or pace."

On the MRFCA form, Dr. Rattan attributed similar difficulties to Varga. In Section I of the form,[1] Dr. Rattan checked boxes indicating that Varga was moderately limited in (1) understanding and remembering detailed instructions; (2) carrying out detailed instruction; (3) maintaining attention and concentration for extended periods; (4) completing a normal workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (5) accepting instructions and responding appropriately to criticism from supervisors; (6) getting along with coworkers without distracting them or exhibiting behavioral extremes; and (7) responding appropriately to changes in the work setting.

---

[1] Section I is a "worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation." It contains twenty mental functions grouped under four main categories: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. To the right of each of the items is a series of decision check blocks under the headings "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation," and "not ratable on available evidence."

Section III of this MRFCA form (the "Functional Capacity Assessment" section) instructed Dr. Rattan to "Explain your summary conclusions in a narrative form." Dr. Rattan, however, instead wrote "See EWS" in the space provided. This notation referred to an electronic worksheet, which was lost by the agency. As a result, Dr. Rattan's narrative summary of Varga's mental residual functional capacity, if it ever existed, was not part of the record before the district or this court.

The Social Security Administration ("SSA") denied both Varga's claim for benefits and her request for reconsideration, so she requested an administrative hearing. In April 2009, Varga appeared for a video hearing before an ALJ, who found Varga not disabled. After the Appeals Council denied Varga's request for review, she filed suit in federal court. In February 2011, the district court reversed and remanded the case to the agency for further proceedings because the ALJ did not analyze opinions from Varga's treating physician and psychologist, and gave inadequate consideration to the disability determination made by the Veterans Administration. The following month, the Appeals Council remanded the case to a new ALJ for further proceedings consistent with the district court's order.

On June 12, 2012, Varga had her second hearing. As part of the hearing, the ALJ formulated a hypothetical question to a vocational expert ("VE") to assess what jobs Varga could perform. *See* 20 C.F.R. § 416.960(b)(2) (an ALJ may enlist a VE to "offer expert opinion testimony in response to a hypothetical question" about whether "physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work"). The

ALJ directed the VE to assume an individual with Varga's vocational profile (age, education, and work experience) who was able to perform

> simple, routine, or repetitive tasks in a work environment … free of fast paced production requirements, involving only simple work re-lated decisions with few if any work place [sic] changes and no more than occasional interac-tion with coworkers or supervisors.

The VE testified that such a person could perform Varga's past work (as an office helper) as she actually performed the job, as well as the jobs of inspector, laundry worker, hand packager, and cashier.

After considering this and other evidence, the ALJ ap-plied the SSA's five-step disability evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] At step one, the ALJ determined that Varga had not engaged in substantial gainful activity since December 2005. At steps two and three, the ALJ found Varga had "moderate difficulties" with "concentration, persistence, or pace." However, at step three, he concluded that Varga did not have an impairment or combination of impairments that met or medically equaled the criteria of Listing 12.03,

---

[2] The regulations require the ALJ to review (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's im-pairments; (3) whether the claimant's impairments meet or medically equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can "make an adjustment to other work" in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

which pertains to schizophrenic, paranoid and other severe psychotic disorders.

Prior to undertaking the fourth and fifth steps, the ALJ was required to make an assessment of Varga's residual functional capacity ("RFC"). 20 C.F.R. § 404.1545(a)(1). This is an assessment of what work-related activities the claimant can perform despite her limitations, which must be assessed based on all the relevant evidence in the record. *Id*. In the ALJ's RFC assessment, he determined Varga could perform

> light work as defined in 20 CFR 404.1567(b) except that the claimant can climb ladders, ropes and scaffolds occasionally. The claimant must avoid all exposure to noise and even moderate exposure to unprotected heights, hazards and the use of moving machinery. The claimant is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few if any work place [sic] changes.

At step four, the ALJ relied on the testimony of the vocational expert that a person with Varga's age, experience, education, and residual functional capacity could perform her past work as an office helper as she actually performed the job. At step five, the ALJ made an alternative finding that a person with Varga's age, experience, education, and residual functional capacity could perform other jobs such as an inspector, laundry worker, or cashier. In light of these findings, the ALJ concluded that Varga had not been disabled between December 2, 2005 and December 31, 2010.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Varga's request for review. *See* 20 C.F.R. §§ 404.955, 404.981. In October 2012, Varga filed a civil action for judicial review of the Commissioner's final decision. The district court affirmed the Commissioner's decision and this appeal followed.

## II. ANALYSIS

We review the district court's affirmance de novo and review directly the ALJ's decision. *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). Specifically, we need to determine if the ALJ's decision was supported by "substantial evidence," which we have described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* An ALJ need not specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

Varga presents only one challenge on appeal—that the ALJ's hypothetical question to the vocational expert was flawed because it failed to account for all of her mental limitations—namely, the "moderate difficulties" in the areas of concentration, persistence, and pace that Dr. Rattan (the state agency's psychological consultant) noted in his assessments and which the ALJ attributed to Varga at steps two and three of its sequential analysis.

In this circuit, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt*, 758 F.3d at 857; *O'Connor–Spinner*, 627 F.3d at 619 ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is

to include all of them directly in the hypothetical."); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); *see also* SSR 96–5p, 1996 WL 374183, at \*5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545.

Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). Although it is not necessary that the ALJ use the precise terminology of "concentration," "persistence," or "pace," we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record. *Yurt*, 758 F.3d at 857. There is no evidence that the VE in this case reviewed Varga's medical history or heard testimony about the various medical limitations that Varga argues were omitted from the ALJ's hypothetical. Thus, we would expect an adequate hypothetical to include the limitations identified by Dr. Rattan. *See id*. (noting hypothetical question to VE should include findings made by state agency psychological consultant of "moderate difficulties" on MRFCA form).

Here, there is medical evidence in the record that Varga has moderate difficulties maintaining concentration, persistence, and pace. Most notably, Dr. Rattan's assessment of Varga's mental RFC for the state agency noted moderate dif-

ficulties in seven areas related to concentration, persistence, and pace: (1) understanding and remembering detailed instructions; (2) carrying out detailed instruction; (3) maintaining attention and concentration for extended periods; (4) completing a normal workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (5) accepting instructions and responding appropriately to criticism from supervisors; (6) getting along with coworkers without distracting them or exhibiting behavioral extremes; and (7) responding appropriately to changes in the work setting. In his decision, the ALJ "concur[red]" with the assessment of Varga's mental state made by the state agency, and this assessment is presumably what led the ALJ to find that Varga had moderate difficulties with regard to "concentration, persistence, or pace" at steps two and three of his sequential analysis. However, the ALJ did not address all of these difficulties in his hypothetical question to the vocational expert. Because a hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace—we find that the ALJ committed reversible error. *See Yurt*, 758 F.3d at 857 (failure of ALJ to include in hypothetical moderate difficulties in concentration, persistence, and pace attributed to applicant in Section I the MRFCA form was reversible error).

The Commissioner makes several arguments in defense of the hypothetical posed by the ALJ, but none are persuasive. First, she argues that the hypothetical and the RFC did in fact account for all of Varga's mental limitations. But a careful dissection of the hypothetical question suggests otherwise. The hypothetical question begins by positing a per-

son capable of performing "simple, routine, and repetitive tasks." These terms refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520. As Varga notes, whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments—*e.g.*, with difficulties maintaining concentration, persistence, or pace—can perform such work. For this reason, we have repeatedly rejected the notion that a hypothetical like the one here "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59 (citing *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (collecting cases)); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting claimant to unskilled, simple work does not account for his difficulty with memory, concentration, and mood swings); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004). The question goes on to clarify that the individual would only be required to perform work

> free of fast paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors.

But these limitations, too, fail to account for all of Varga's difficulties maintaining concentration, persistence, and pace, which, as the record shows, were related to her diagnosed anxiety and depression, as well as her physical problems and pain. "Few if any work place changes" with limited "in-

teraction with coworkers or supervisors" deals largely with workplace adaptation, rather than concentration, pace, or persistence. It is also problematic that the ALJ failed to define "fast paced production." Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed.

Our recent decision in *Yurt*—issued after the district court rendered its decision here—is squarely on point. There, the applicant's moderate limitations noted in Section I of the MRFCA form were substantially similar to Varga's (he had six of the seven difficulties in concentration, persistence and pace attributed to Varga). *See* 758 F.3d at 855. However, we rejected a hypothetical almost identical to the one posed here because it did not adequately encompass all of the limitations. *Id.* (rejecting hypothetical that described an individual that can "remember and carry out unskilled task[s] without special considerations … relate on at least a superficial basis with coworkers and supervisors … attend to tasks for sufficient periods of time to complete" and who "should not work around large numbers of people").

Next, we address the Commissioner's argument that at steps two and three, the ALJ did not find Varga suffered from moderate difficulties in all three of the categories of concentration, persistence, and pace. The Commissioner rests this contention on the fact that the ALJ referred to difficulties in "concentration, persistence, *or* pace"—rather than concentration, persistence, *and* pace. The Commissioner suggests that the ALJ was referring only to concentration, although this is nowhere expressed in the decision and is not supported by the record, and that this impairment was cov-

ered by the hypothetical question posed. We disagree with the Commissioner's interpretation. The word "or" has an inclusive sense (A or B, or both) as well as an exclusive one (A or B, not both). *See* GARNER DICTIONARY OF LEGAL USAGE, 3d ed. at 639 (citing Scott J. Burnham, THE CONTRACT DRAFTING GUIDEBOOK 163 (1992)) (noting that "or" is generally used in the inclusive sense). For example, a hospital patient may be asked whether he has nausea, vomiting, or cramps. If the patient responds "yes," he may mean one, two, or all three of the symptoms are present. Likewise, a person deemed to have problems in "concentration, persistence, or pace" may have problems with one, two, or all three of those categories. Here, we find it exceedingly unlikely that the ALJ meant to use "or" in the exclusive sense. First, the record shows Varga suffers from difficulties in all three of these areas. Moreover, the agency forms from which these terms emanate often lump concentration, persistence, and pace together as an umbrella category. The PRT form, for example, treats "concentration, persistence, or pace" as one broad category of functioning. And the MRFCA form lists "sustained concentration and persistence" as one category (with the other three being "understanding and memory," "social interaction," and "adaptation"). *See also Yurt*, 758 F.3d at 858 (treating "concentration, persistence, or pace" as a broad category of mental functioning).[3]

---

[3] In any event, even if the Commissioner were correct that the ALJ found Varga only suffered from moderate difficulties in concentration (the Commissioner does not argue that the ALJ only found difficulties in either pace or persistence), we fail to see how Varga's problems "maintaining concentration for extended periods" were encapsulated by the hypothetical question, which posited an individual able to do unskilled

Finally, the Commissioner argues the boxes checked by Dr. Rattan in Section I of the MRFCA form pertaining to concentration, persistence, and pace do not constitute medical evidence that the ALJ was required to include in his RFC and hypothetical question to the VE. For this proposition, the Commissioner cites *Smith v. Commissioner of Social Security*, 631 F.3d 632, 637 (3d Cir. 2010), which held that an ALJ was not required to include findings noted in Section I of the MRFCA form that the claimant was moderately limited in various areas of mental functioning because Section I is merely a worksheet to aid doctors in deciding the presence and degree of functional limitations. According to the Commissioner, the ALJ is only required to include findings made at Section III of the MRFCA form, in which the doctor is to "translate" his or her worksheet observation into a mental RFC. *See Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002). Conveniently for the Commissioner, there is no narrative assessment here to which the ALJ was required to refer because, as noted above, Dr. Rattan failed to fill out Section III and the agency lost the electronic worksheet where he allegedly made Varga's RFC assessment.

This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE. In fact, in *Yurt*, we explicitly rejected the argument that "we should be unconcerned … with the failure of the ALJ to mention the six areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately 'trans-

---

work free of "fast paced production requirements" with limited social interactions.

lated' these limitations into a mental RFC that the ALJ could reasonably adopt." 758 F.3d at 858. And as noted above, the moderate limitations attributed to the claimant in *Yurt* at Section I of the MRFCA form—the exclusion of which from the hypothetical question constituted reversible error—were virtually identical to those attributed to Varga. *See id*. at 854-55.

Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations. *See Johansen*, 314 F.3d at 286. But where, as here, no narrative translation exists—because of error on the part of the doctor or the agency—an ALJ's hypothetical question to the VE must take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form, including those related to concentration, persistence, or pace.

## III. CONCLUSION

For these reasons, the judgment of the district court is REVERSED, and this case is REMANDED with instructions that it be returned to the SSA for further proceedings consistent with this opinion.