NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2017
Decided August 10, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 16-4028

| | |
|---|---|
| SANDRA SIKORSKI,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division. |
| *v.* | No. 15 C 2178 |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br>    *Defendant-Appellee*. | Sheila Finnegan,<br>*Magistrate Judge*. |

**O R D E R**

Sandra Sikorski, a 52-year old who suffers from Crohn's disease, obesity, depression, and degenerative joint disease in her neck, appeals the district court's judgment upholding the denial of her application for disability insurance benefits. An administrative law judge found that, despite her impairments, she retained the residual functional capacity to perform her past work as a shipping checker. In reaching this conclusion, however, the ALJ did not make sufficient factual findings about the length of time that Sikorski, who struggled with diarrhea as a result of her Crohn's disease, needed for bathroom visits. Because we cannot evaluate whether the ALJ accounted for

all of the necessary limitations on her ability to work, we reverse and remand for further proceedings.

In 2011 Sikorski applied for disability insurance benefits based on her Crohn's disease and a litany of other ailments (bulging discs in her neck, arthritis in her knees and hands, attention-deficit disorder, and depression) that, she said, rendered her unable to work. Sikorski, a high school graduate, previously worked as a part-time collection-agency agent (1997–1998), a full-time customer service representative/ shipping checker for a warehouse (2005–2007), and most recently a part-time customer service representative for a repair and towing company (2008–2009).

Sikorski's medical records date back to 2005, when she was hospitalized because of abdominal pain and an irritated gallbladder and diagnosed with Crohn's disease. (She said at that time that she already had suffered from Crohn's disease for 16 years.) About two weeks after being discharged, she developed a complete obstruction in one part of her colon, necessitating what she described as a colon resection. Sikorski said that after this procedure, her diarrhea symptoms "steadily seemed to have gotten a little bit worse." Her frequent bowel movements became such a significant problem that in 2007 she had to leave her warehouse job; her need to go to the bathroom so often, she said, made it not "worth it" to work full-time.

Over the next four years, Sikorski had continued physical difficulties. In 2008 her gallbladder had to be removed and in 2010 she struggled with neck pain (caused by herniated disks in her lower neck and a painful condition of compressed nerves in her spine) and said that she could no longer work. In 2011 she aggravated her neck pain after a fall, for which she received anti-inflammatory and pain-relieving drugs.

Meanwhile her Crohn's disease worsened. She returned in mid-2011 to the office of her treating physician, Dr. Nader Aziz, whose staff reported that she had "constant pain and diarrhea" and that she needed six to nine bathroom visits during the day. She was prescribed Apriso, a drug that reduces swelling in the colon. At this appointment, she also was assessed as having attention-deficit disorder (it is not clear from the treatment records what led to this determination) and received a prescription for Vyvanse, a central nervous stimulant, to help her focus her attention.

In the fall of 2011, she was evaluated by several doctors in connection with her application for disability benefits and found to have mild mental and physical limitations. She was first examined by an internal medicine physician, who determined

that she had mild tenderness in her neck and abdomen and reported that she had diarrhea eight to ten times per day. She then met with a psychologist, who ruled out attention-deficit disorder and deficits in her cognitive abilities, but assessed her as having "some periods of [depression] related to gastrointestinal problems." Sikorski next visited a psychiatrist, who concluded that her attention deficit hyperactivity disorder did not create a "severe impairment" and caused only "[m]ild" restrictions in activities of daily living and "[m]ild" difficulties in social functioning and maintaining concentration. She finally was seen by another doctor, who assessed her physical limitations and determined that she could frequently lift or carry 25 pounds, could sit, stand, or walk for "about 6 hours in an 8-hour workday," and required no restrictions on what she could push or pull.

In late 2011 the Social Security Administration denied Sikorski's disability application. She requested reconsideration.

Over the next year, Sikorski continued to report diarrhea and intermittent abdominal pain caused by her Crohn's disease. She also had bouts with depression.

At her hearing before an administrative law judge in 2013, Sikorski testified about her continuing difficulties relating to her Crohn's disease and other conditions. She testified that despite trying six different medications, her Crohn's disease still gave her stomach pain and made her have six to nine sudden episodes of diarrhea each day, requiring bathroom visits of five to ten minutes. She said that her diarrhea began getting worse before her colon surgery in 2005 and became progressively more frequent between 2003 and 2013. She also testified about her neck pain, which she described as a "constant dull" pain that is "tolerable," and her knee pain, which prevented her from walking more than a block. Regarding her depression, she reported that she was taking two prescriptions and had seen a psychologist for about a year.

The ALJ then questioned an impartial medical expert, a clinical psychologist, who testified that Sikorski's major depressive and attention deficit disorders were not severe impairments and created only mild limitations on her activities of daily living, social functioning, and concentration.

The ALJ asked a vocational expert to consider the possible employment opportunities for a person of Sikorski's age, education, work experience, and particular physical limitations (who could not climb ladders, ropes, or scaffolds, and must only occasionally climb ramps or stairs, stoop, balance, crouch, crawl, or kneel), and the VE

concluded that this person could perform Sikorski's last full-time job as a shipping checker. When the ALJ added the limitation that this person's work station must be "in proximity to a restroom," the VE responded that the question was "difficult to answer" because he could not generalize about the location of bathrooms for shipping checker and other jobs. The VE testified that employees generally were allowed five-minute bathroom breaks every two hours but that a person requiring ten-minute breaks would not be able to find "competitive work."

The ALJ applied the five-step analysis in 20 C.F.R. § 404.1520(a)(4), and found Sikorski not disabled. The ALJ determined that she had not engaged in substantial gainful activity since the alleged onset date of April 1, 2010 (step one); that her Crohn's disease, degenerative joint disease in her cervical spine, and her obesity were severe impairments (step two); that these impairments did not equal a listed impairment (step three); that she had the residual functional capacity to perform light work, with the limitations of only occasionally climbing stairs, ramps, balancing, crouching, crawling, stooping, or kneeling and never climbing ladders, ropes, or scaffolds; and that she could perform her past job as a shipping checker (step four).

In determining Sikorski's residual functional capacity, the ALJ found her testimony about the severity of her impairments "not entirely credible." Regarding Sikorski's "neck symptoms," the ALJ determined that the treatment records justified only the light-work restriction that was included in the RFC. The ALJ then noted that flare-ups of her Crohn's disease (besides her diarrhea) were not well-documented and underscored that Sikorski was able to work in 2005, when her Crohn's disease symptoms were worse. Finally, to support the omission of mental limitations from the RFC, the ALJ pointed to the psychiatrist's assessment that Sikorski's mental condition caused only mild restrictions on her activities of daily living.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

A magistrate judge, presiding by consent, *see* 28 U.S.C. § 636(c)(1), upheld the ALJ's decision. In the magistrate judge's view, the ALJ provided "minimal" but sufficient analysis of the severity of Sikorski's mental impairments and did not ignore any relevant evidence of her Crohn's disease. The magistrate judge emphasized that the ALJ's RFC assessment was "more restrictive than any of the limitations imposed by the physicians of record" and concluded that the RFC reasonably reflected the evidence in record.

On appeal Sikorski argues that the ALJ improperly disregarded her bathroom-related limitations in determining that she could work. According to Sikorski, the ALJ erred by not imposing a restriction in the RFC to accommodate her need to use the restroom six to nine times per day—requiring breaks of five to ten minutes apiece. She highlights the VE's testimony that a person requiring 10-minute bathroom breaks would not be employable full-time. She also contends that the ALJ overlooked her documentation that she struggled with Crohn's disease persistently and not only when the condition flared up.

Our concern with the ALJ's assessment is that she did not adequately justify her conclusion that Sikorski could perform her past work. The ALJ did not resolve whether Sikorski's bathroom visits required five minutes, a duration that the VE said employers generally accommodate, or ten minutes, which the VE testified would render her unemployable. If she required six ten-minute breaks during the workday, then she would need to be away from her workstation for one hour; on the other hand, if she went to the bathroom before and after work and required only five-minute visits, she might need only three five-minute breaks during work hours, and normal work breaks could allow her to take care of her bathroom needs. The government counters that the ALJ was not required to decide this factual issue or adopt a limitation to address Sikorski's bathroom needs because she managed to work for several years as a shipping checker despite her diarrhea symptoms. But the record of her past work does not reflect whether her employer was forgiving by making an exception to allow her lengthy bathroom breaks. Moreover Sikorski testified at the hearing that her need during her shipping-checker job to spend significant time in the bathroom caused her to *leave* this job. The ALJ made no finding regarding the required length of her bathroom visits, and we cannot speculate on facts not contained in the record. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). Because we cannot be confident that the ALJ provided the vocational expert with a "complete picture" of Sikorski's RFC, *Id.* at 820, we remand this case so that the ALJ may engage in further factfinding on this matter.

Sikorski also challenges the ALJ's adverse-credibility finding and conclusion that her mental impairments were not severe. Because we have decided that the ALJ based her RFC determination on inadequate consideration of Sikorski's bathroom needs, we need not evaluate her arguments on these other matters. On remand the ALJ may need to take a fresh look at these matters in assessing Sikorski's ability to work.

Accordingly we REVERSE and REMAND for further proceedings consistent with this opinion.