**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 24, 2019
Decided May 16, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1629

| | |
|---|---|
| BONNIE DUDLEY,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-CV-1721-WCG |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br>    *Defendant-Appellee.* | William C. Griesbach,<br>*Chief Judge.* |

**O R D E R**

Bonnie Dudley, a 53-year-old former housekeeper and cook who suffers from a host of physical and mental health conditions, challenged the denial of her application for Social Security disability benefits. An Administrative Law Judge denied her application for disability insurance benefits after finding that although she suffers from several mental impairments (depression, anxiety disorder, and attention deficit disorder) and physical infirmities (pain in her back, hips, and legs), she could perform a limited range of light work. Because the ALJ's decision was supported by substantial evidence, we affirm.

**I**

Bonnie Dudley, then 48-years-old, applied for supplemental security income and disability insurance benefits in 2013. Before her symptoms became overwhelming, Dudley worked as a housekeeper and cook at a nursing home. In 2012, she quit because of the pain from her physical infirmities and because of her "really bad" anxiety.

Four months after Dudley applied for disability benefits, her primary-care physician referred her to the behavioral-care department at a local health facility to receive treatment for depression, anxiety, attention deficit disorder, and agoraphobia with panic disorder. The primary-care physician recorded Dudley's comment that she had dealt with anxiety and depression for more than 25 years.

Dudley was then referred by the Disability Determination Bureau to a consultative psychologist, Dr. Sandra King. After an examination, Dr. King diagnosed Dudley with major depression, generalized anxiety, post-traumatic stress, and attention-deficit/hyperactivity. She characterized Dudley's prognosis as "guarded, given the chronicity of her psychiatric disorders." In a "statement of work capacity," Dr. King opined that she did not expect Dudley to have difficulties understanding directions, but her "lack of concentration/distractibility" could affect her ability to remember and carry out directions. Dr. King added that Dudley's ability to concentrate was "mildly impaired," and that Dudley likely would have "moderate to severe difficulties withstanding routine work stress and adapting to change."

Also in connection with Dudley's application, state-agency psychiatrist Chang-Wuk Kang reviewed Dudley's medical records and opined that she had moderate limitations in a number of areas related to concentration, persistence, and pace. The doctor explained that Dudley might have some difficulty focusing on detailed tasks, but that she could perform simple repetitive tasks. As for her "adaptation limitations," Dr. Kang opined that Dudley might have some difficulty dealing with workplace stresses, but that she could adjust to work settings requiring simple, repetitive tasks.

When the Social Security Administration reconsidered Dudley's application for benefits in 2014, another state-agency psychologist, Dr. David Biscardi, reviewed her medical records and identified her most serious limitations as attention-deficit hyperactivity disorder (ADHD), depression, and anxiety. Dr. Biscardi concluded that Dudley was "moderately limited" in many tasks related to her ability to work: her ability to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based

symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He concluded that she could understand, remember, and sustain performance of one- to three-step tasks, so long as the tasks were not complicated and her interactions with coworkers and supervisors were brief.

At her hearing before the ALJ in 2015, Dudley testified that her pain and "really bad" anxiety prevented her from working. She felt pain "all over"—"constant pain" in her legs and hips, pain in her back at all times, even when taking her medications. She also testified that she had problems concentrating; she had to re-read words several times to follow along. "Everything" caused her anxiety—"just leaving the house, just driving, people." She required her husband's assistance to go grocery shopping and attend her medical appointments, and she had stopped driving three years prior. She had not left the house alone in over a year. Her anxiety triggered panic attacks at least twice a week; during these attacks, she was unable to think about or do anything else.

The ALJ asked a vocational expert to consider the work that would be available to a person of Dudley's age, education, and work experience with her physical and mental limitations. This hypothetical person could do some light work but would also be "limited to simple routine tasks, jobs that have no more than simple decision-making." She should not be exposed to "more than occasional and minor changes in the work setting in terms of workplace and work processes." The ALJ noted that this person could work at an "average production rate," but not at a "significantly above average or highly variable production rate work." That work, he added, should not be presented to her "at an excessively fast or highly variable pace." The ALJ further specified that this person could briefly and superficially interact with other people, without doing "direct public service work," teamwork, or work "in crowded or hectic environments."

The VE opined that such a person could work in light, unskilled positions such as "office helper" or "mailing clerk." The ALJ later added a restriction to sedentary work, to which the VE replied that appropriate positions would include address clerks, account clerks, and sorting positions.

The ALJ denied Dudley's application for disability benefits. Applying the five-step analysis found in 20 C.F.R. § 404.1520(a)(4), the ALJ determined the following: at Step 1, Dudley had met the insured status requirements and had not engaged in substantial gainful activity since her alleged onset date; at Step 2, Dudley had the severe

impairments of anxiety disorder, depression, ADHD, degenerative disc disease, and degenerative joint disease; at Step 3, neither Dudley's physical nor mental impairments equaled a listed impairment; at Step 4, Dudley had the residual functional capacity (RFC) to perform a range of light work with some limitations (simple, routine, and repetitive tasks; work involving no more than simple decision-making or the exercise of simple judgment; a work setting with no more than occasional and minor changes; and no jobs that required work at a variable pace or above an average pace, in direct public service, in crowded or hectic environments, or involving tandem tasks); at Step 5, Dudley could not perform her past relevant work but could still perform jobs that existed in significant numbers.

The Appeals Council denied review, and so the ALJ's decision was the Commissioner's final decision. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Dudley sought judicial review, and the district court upheld the Commissioner's decision. The court rejected both of Dudley's arguments—first, that the ALJ failed to properly account for limitations on Dudley's ability to maintain concentration, persistence, and pace when formulating Dudley's RFC; and second, that the ALJ failed to assign weight expressly to the opinion of Dudley's consultative psychologist, Dr. Sandra King. The district court explained that the ALJ's listed mental limitations exceeded the limitations opined by the state-agency doctors, who were the only sources to opine on Dudley's functional work-related limitations. In addition, the RFC was, in its "entirety," "clearly directed at minimizing [Dudley's] stress," so the ALJ did not disregard Dr. King's opinion.

## II

**A. Whether the ALJ failed to properly encapsulate his finding of Dudley's moderate limitations in concentration, persistence, and pace into the hypothetical posed to the VE**

Dudley argues that the ALJ failed to account for her moderate limitations in concentration, persistence, and pace in both the residual functional capacity assessment and resulting hypothetical posed to the VE. In his RFC assessment and hypothetical to the VE, the ALJ identified these mental limitations:

- Limitation to simple, routine and repetitive tasks;
- Work involving no more than simple decision-making;
- No more than occasional and minor changes in the work setting;

- Work requiring the exercise of only simple judgment;
- Tolerance of an average production pace, but not above average or variable pace;
- Preclusion from work involving direct public service, in person or over the phone;
- Tolerance for brief and superficial interaction with the public, which is incidental to job duties;
- Preclusion from work in crowded, hectic environments;
- Tolerance for brief and superficial interaction with supervisors and coworkers; and
- No tandem task work.

Without a "logical bridge" to link these moderate limitations to the limitations presented by the hypothetical, *see Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), Dudley argues that the hypothetical did not orient the VE to her limitations. And because the hypothetical was flawed, Dudley adds, the vocational testimony was not supported by substantial evidence. This court has specified that "the most effective way" to inform the VE fully of a claimant's limitations is to include all of them directly in the hypothetical. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

Although the ALJ did not explicitly include Dudley's moderate limitations in concentration, persistence, and pace in the hypothetical, he did adequately account for these limitations. Dudley's greatest limitations are stress- and panic-related, and the ALJ adequately addressed them by limiting her to "simple, routine and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment"; by excluding work above an average pace, at a variable pace, or in crowded, hectic environments; and by limiting her interactions with the public, supervisors, and coworkers. Although this court recently observed that limitations on social interaction might not encapsulate concentration difficulties because a claimant may have stress-related symptoms even when others are absent, *Winsted v. Berryhill*, --- F.3d ----, 2019 WL 1941179, at *4 (7th Cir. Feb. 8, 2019), the ALJ here specifically limited Dudley to "work requiring the exercise of only simple judgment,"—a limitation that specifically accounts for Dudley's concentration difficulties.

Critically, Dudley did not identify any limitations that the ALJ omitted and should have included in the hypothetical question. Indeed, the hypothetical that the ALJ posed to the vocational expert contained limitations that were *more* restrictive than the functional work-related limitations identified by the state-agency doctors. The ALJ's

stated limitations, for example, went so far as to preclude Dudley from tandem tasks with supervisors and coworkers, as well as work above an average or variable pace. This limitation was more restrictive than that suggested by the report of Dr. Kang, who opined that Dudley would have some difficulty focusing on detailed tasks, but that she could "maintain concentration and persistence to complete workdays and workweeks in performance of simple repetitive task[s]"; that Dudley "may have difficulty in dealing with general public but she can interact otherwise"; and that Dudley "might have some difficulty dealing with work place stresses but she can adjust to the settings requiring simple repetitive task[s]." The ALJ's stated limitation was also more restrictive than that suggested by the report of Dr. Biscardi, who opined that Dudley would become overwhelmed with complicated procedures, but retained the capacity to complete a normal workday, interact briefly with coworkers and supervisors, and adapt to "changes/stressors" associated with "simple routine competitive work activities."

Dudley also contends that the state-agency psychologists' opinions were flawed because of internal inconsistencies within them. Specifically, she says that Dr. Kang provided a written narrative, which failed to account for various limitations that he had noted on a checklist elsewhere in his assessment (e.g., limitations in attention and concentration). Dr. Biscardi's narrative similarly failed to account for a limitation in work pace. But Dudley mistakenly presumes that the psychologists' answers to the checklist section outweigh the narrative opinion section. In *Varga*, this court noted that while checklist observations cannot be ignored, they are "perhaps less useful to an ALJ than a doctor's narrative." 794 F.3d at 816. Further, an ALJ may rely on a doctor's narrative where it adequately translates those worksheet observations. *See, e.g., Johansen v. Barnhart*, 314 F.3d 283, 287–89 (7th Cir. 2002).

### B. Whether the ALJ failed to include a key finding from the opinion of Dudley's consultative examiner in the RFC determination

Dudley next contends that the ALJ's RFC assessment failed to account for Dr. King's opinion that Dudley would have moderate-to-severe limitations handling work stress or adapting to change. If the limitations contained in the RFC assessment were "supposed to address work stress or adapting to changes," Dudley argues, the ALJ did not say enough to justify his reasoning.

But the ALJ, short of rejecting Dr. King's opinion, in fact accepted it. True, the ALJ did not assign a specific weight to Dr. King's opinion. But this error was harmless because the ALJ took heed of Dr. King's opinion by adding limitations accounting for work stress. The ALJ limited Dudley to only occasional and minor changes in the

workplace; he addressed the issue of routine work stress by specifying that she could only do tasks requiring simple judgment and at most an average pace—limitations accommodating Dr. King's conclusion that Dudley would have difficulty adapting to change-related work stress. When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

## III

Finally, three weeks before oral argument, the Commissioner moved for leave to submit a supplemental brief to "address concerns" raised by this court in recent decisions reversing the judgment on grounds that the ALJ inadequately accounted for a claimant's moderate difficulties in the area of concentration, persistence, and pace.[1] In each of these decisions, this court urged the ALJ to apprise the VE fully of a claimant's difficulties with "concentration, persistence, and pace." The Commissioner sought to supplement its brief to address "constraints" that ALJs face from agency regulations in following the court's advice. The Commissioner also wished to draw our attention to a recent Supreme Court decision, *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), which "provides pertinent guidance" in that it "rejected a categorical rule relating to vocational expert testimony" in favor of a substantiality-of-evidence inquiry to be conducted on a "case-by-case" basis. The court granted the Commission's motion for leave to file the brief before receiving Dudley's opposition to it, so the court deemed Dudley's opposition as a motion to reconsider. Because we need not—and do not—rely on the Commissioner's supplemental briefing for the disposition of this case, we DENY the motion to reconsider as moot. The supplemental brief does not prejudice Dudley because it does not affect this appeal's outcome.

AFFIRMED

---

[1] *DeCamp v. Berryhill*, 916 F.3d 671, 674 (7th Cir. 2019); *Radosevich v. Berryhill*, 759 Fed.Appx. 492, 495 (7th Cir. 2019) (nonprecedential disposition); *Paul v. Berryhill*, 760 Fed.Appx. 460, 465 (7th Cir. 2019) (nonprecedential disposition); *Mischler v. Berryhill*, No. 18-1523, 2019 WL 1299948, at *3 (7th Cir. Mar. 20, 2019) (nonprecedential disposition).