In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1957

GAIL A. MARTIN,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:18-cv-33 — **Susan L. Collins**, *Magistrate Judge.*

ARGUED DECEMBER 3, 2019 — DECIDED FEBRUARY 7, 2020

Before WOOD, *Chief Judge*, and HAMILTON and SCUDDER,
*Circuit Judges.*

SCUDDER, *Circuit Judge.* Gail Martin suffers from serious
back pain and psychiatric conditions. Two administrative law
judges have considered her application for disability benefits
under the Social Security Act. The first ALJ determined that
Martin's severe impairments left her capable of performing
only a limited range of sedentary jobs. On appeal the district
court remanded for a more thorough consideration of

Martin's mental health problems. A new ALJ then entered the mix and found that Martin had no physical limitations—none whatsoever—and declined to award disability benefits. Because the second ALJ's decision is not supported by substantial evidence, we reverse. We also take the rare step of ordering the award of benefits.

**I**

**A**

Gail Martin, a 67-year-old woman living in northeast Indiana, sought benefits due to physical and psychological problems. Her persistent back pain stems from two car accidents, and she likewise suffers from depression, anxiety, bipolar disorder, panic disorder, and PTSD. These conditions caused Martin to stop working in 2009. Before then she had worked as a home health aide, data entry clerk, and administrative assistant.

For her back pain, Martin sought treatment from chiropractors. In 2004 a chiropractor ordered x-rays and saw that compressed discs were the source of Martin's pain. He recommended a 20-pound lifting restriction, but also advised Martin that her condition would probably worsen even with ongoing treatment. Since then Martin has restricted her activities. She testified in her first hearing that her back pain prevents her from mopping floors, using a vacuum cleaner, or performing any housework beyond light dusting. She conveyed similar points at a second hearing.

At the Commissioner's request, Dr. David Ringel examined Martin before her first ALJ hearing. While not providing a diagnosis or prescribing workplace limitations, he found that Martin experienced back spasms, was slow to move off

and on the examination table, and had significantly limited range of motion in her neck, back, and hips. Two non-examining state agency doctors (J. Sands and M. Ruiz) reviewed Martin's medical records and case file in 2011 for physical impairments and concluded that she could perform no more than a limited range of light work. Only in 2014 did one state agency doctor, Joshua Eskonen, conclude that Martin had no physical limitations. Dr. Eskonen offered that view without examining Martin or reviewing Dr. Ringel's findings.

For years Martin has received mental health treatment at the Northeastern Center in Indiana. Each of her providers has noted Martin's psychiatric conditions and symptoms, including her difficulties concentrating and interacting with others. The therapist who met regularly with Martin found severe social anxiety and longstanding depression that would preclude her from working full-time. Before Martin's second hearing in 2016, a state agency psychologist reviewed her file and agreed that she was limited in her ability to remember and carry out detailed instructions, maintain attention and concentration, interact with the general public and supervisors, and respond to changes in the workplace.

B

Following the first hearing in 2012, the ALJ concluded that Martin had severe physical impairments but could work in a sedentary job requiring little social interaction, including in her previous positions as a data entry clerk or administrative assistant. On appeal, the district court remanded to reconsider whether the ALJ's residual functional capacity or RFC determination—the analysis of what work activities Martin could perform—reflected all of Martin's mental health challenges. The court noted that the appeal presented no

questions about the ALJ's findings that Martin's physical limitations left her able to perform only sedentary work.

The case went to a new ALJ on remand. Martin took the position that the second ALJ was bound by the first ALJ's finding of her physical limitations. The new ALJ disagreed and concluded that the first ALJ's conclusions could be revisited. A hearing then ensued. Martin testified that, although she continued to experience back pain, she had not sought further treatment because her chiropractor told her that there was nothing she could do except avoid aggravating her back. After hearing this testimony, the ALJ remained skeptical of Martin's allegation of ongoing back pain because the record revealed "an overall lack of treatment, treatment sought, [and] treatment received."

The second ALJ performed the required five-step analysis under the Social Security regulations and concluded that Martin was not disabled. The ALJ found that Martin's psychological problems were serious and limited the work she could perform. When it came to Martin's physical impairments, however, the ALJ concluded that Martin's back pain was not severe and did not in any way affect her ability to work. The ALJ based that conclusion on the lack of treatment for back pain in the record and Dr. Eskonen's finding that Martin had no physical impairments. At no point in its analysis of the medical record did the second ALJ discuss the first ALJ's finding that Martin suffered from severe physical limitations.

The second ALJ then turned to the RFC determination and, unlike the first ALJ, concluded that Martin had the physical ability "to perform a full range of work at all exertional levels." From there the second ALJ found that Martin's mental health conditions meant that she could work in a job

involving only simple tasks with low stress, occasional changes, a flexible pace, and superficial interactions with others. Those limitations, the ALJ determined, prevented Martin from returning to any of the jobs she held in the past. But there were positions, including as a cleaner and warehouse worker, that the ALJ found did not exceed Martin's abilities. In the end, the second ALJ concluded that Martin could perform these jobs and therefore was not disabled. The district court affirmed the denial of benefits.

## II

In reviewing Martin's appeal, we reverse only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence. See *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding requirement. It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Martin presses three points on appeal. First, she argues that the second ALJ did not incorporate her full mental limitations into the RFC determination. She then posits that the law of the case doctrine required the second ALJ to adopt the first ALJ's finding that she could perform only a restricted range of sedentary work. Alternatively, Martin contends that the second ALJ's conclusion that she had no physical limitations was not supported by substantial evidence.

A

We start with Martin's contention that the second ALJ overestimated her mental abilities. Martin suggests that the ALJ's RFC determination failed to translate her mental health symptoms into limitations related to concentration, persistence, and pace—often shorthanded as CPP in the lexicon of Social Security law.

CPP limitations are familiar territory, especially in recent years. Over many cases we observed a recurring error: ALJs would limit a claimant to "unskilled work" and conclude that by doing so they had incorporated a claimant's full range of CPP limitations—challenges concentrating, staying on task, and maintaining a given pace in the workplace. Time and again we have disagreed. See, *e.g.*, *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (reversing and explaining that the observation that someone can perform simple tasks says nothing about whether she can do so over the course of a full workday); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019) (emphasizing that there is no basis for concluding that eliminating jobs with production quotas can serve as a proxy for CPP limitations); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (reversing because the hypothetical question posed to a vocational expert about the claimant's RFC did not include accommodations for CPP limitations).

In this area of the law, "unskilled work" is a term of art (indeed one defined by regulations) and refers to tasks that are not complex and do not take long to learn. See 20 C.F.R. § 404.1568(a). As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular

workplace. See, *e.g.*, *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (explaining that limiting a claimant to simple and routine tasks did not account for his concentration and functioning deficits). Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

Martin's argument sounds in the familiar. She suggests that the second ALJ erred when discussing her ability to complete work on time. The ALJ found that Martin could work only in "an environment that allowed her to sustain a flexible and goal oriented pace." Invoking *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), Martin asserts that this description is too vague to guide any determination of what work, if any, she can perform over an entire workday. Our holding in *Varga* did not root itself in vagueness, though. To be sure, we noted that the phrase "fast paced production" had more than one meaning. *Id*. But we reversed because the ALJ failed to include the claimant's significant problems concentrating in the RFC determination. See *id*. at 814.

A more general observation warrants reinforcing. The law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work. See, *e.g.*, *Crump*, 932 F.3d at 570 ("As a matter of form, the ALJ need not put the questions to the [vocational expert] in specific terms—there is no magic words requirement."). We decline to provide a glossary of adjectives for use in RFC determinations. What we do require—and our recent precedent makes plain—is that the ALJ must account for the "totality of a claimant's limitations" in determining the proper RFC. See *Moreno*, 882 F.3d at 730 (internal citation omitted).

We see no error here. The second ALJ did not take any of the shortcuts on Martin's CPP limitations that we have found problematic in other cases. To the contrary, the ALJ tailored Martin's RFC to her CPP limitations without assuming that restricting her to unskilled work would account for her mental health impairments.

Start with concentration. The second ALJ found that "[Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions." Moving to persistence, the ALJ, in defining and tailoring the RFC, further determined that Martin could stay on-task and thereby "meet production requirements." Of course, even if someone is on-task, it is still possible she may operate at such a slow pace that an employer would not find her work satisfactory. Hence, the second "P"—pace—must enter the equation. The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented. Ideally, the ALJ would have brought to the surface what is surely implicit in the determination—that any pace-based goals must be *reasonable* as a way of signaling that the employer could not set the bar beyond the person's functional reach. We take comfort here from the fact that the jobs the vocational expert suggested inherently reflected such a reasonableness limitation. Although Martin complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more.

## B

This brings us to the second ALJ's finding that Martin had no physical limitations whatsoever. Martin invites us to make quick work of this appeal by reversing on the ground that the

law of the case doctrine bound the second ALJ to the first ALJ's conclusion limiting her to sedentary work. We cannot do so, however, as the operation of the doctrine in this area is complex and underdeveloped. Our case law instructs that an administrative agency must "conform its further proceedings in the case to the principles set forth in the [appellate] decision." See *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). But we have not explained how that directive applies to previous findings not reviewed on appeal—here to findings made by one ALJ that implicated issues reexamined by a second ALJ.

We can leave the issue for another day, though, because the second ALJ's determination that Martin could perform physical work "at all exertional levels" finds nowhere close to substantial support in the record. The second ALJ assigned little weight to every medical opinion related to physical conditions except for the one provided by Dr. Eskonen, an agency physician who never examined Martin nor reviewed her previous case file. The ALJ even credited Dr. Eskonen's opinion over that of Dr. Ringel, the state-agency doctor who did perform a physical examination of Martin at the Commissioner's request. See *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (finding error in overlooking consulting physician report and relying instead on non-consultative opinions); see also 20 C.F.R. § 404.1520c(c)(3)(v) (explaining that, in evaluating evidence, an ALJ must consider that an examining doctor may have more insights than a doctor reviewing evidence in a folder).

Even more, in choosing to credit particular findings Dr. Ringel made about Martin's physical ability, the second ALJ altogether ignored others making plain that Martin had serious neck and back problems. The ALJ's analysis strikes us

as impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary. See *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The details prove the point. The second ALJ made much of the fact that Martin walked without a limp during her appointment with Dr. Ringel and drove herself to the medical clinic. But Dr. Ringel's report is replete with other findings on Martin's physical abilities that the second ALJ discounted. Specifically, Dr. Ringel reported that Martin moved slowly in the examination room and experienced pain at several points during the exam. So, too, did Dr. Ringel note that Martin had extremely limited range of motion in her neck, back, and hips.

Many of Dr. Ringel's observations align with the first ALJ's findings on Martin's physical limitations. Recall that the first ALJ limited Martin to a restricted range of sedentary work, which involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Contrast those limitations with the second ALJ's assessment that Martin had the physical capacity to perform *any* job. Crediting the second ALJ's finding would mean—literally—that Martin can perform what the Commissioner considers "very heavy work," which requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." *Id*. § 404.1567(e). On this view, Martin would be able to work full-time as a construction worker or a home builder. But the record evidence points in the opposite direction. If Martin can barely perform simple household tasks, it defies reality to conclude that she is able to perform physical labor at *any* level of exertion. Because the

evidence falls far from supporting the second ALJ's finding, we must reverse.

What most concerns us is that the second ALJ did not grapple with the first ALJ's findings that Martin could perform only sedentary work. And that was so even though the second hearing entailed the presentation of no new evidence bearing on Martin's physical limitations. While the law may not compel a comparative analysis, we would have expected the second ALJ to explain the basis for reaching such a vastly different conclusion about whether Martin's physical condition affected the jobs she could perform.

### III

Martin asks us not only to reverse but also to remand with instructions to grant benefits. That remedy is a marked departure from our typical practice of remanding to the agency for further proceedings. See, *e.g.*, *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005); *Wilder*, 153 F.3d at 804.

Martin is right that extraordinary circumstances weigh in favor of an outright award of benefits here because the record "can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). Indeed, the agency's own guidance compels this outcome.

In the social security appeals that come to our court, we most often review the ALJ's application of a five-step framework that ends with a vocational expert opining whether there are jobs in the economy that someone with the claimant's qualifications and limitations could perform. See 20 C.F.R. § 404.1520(f). But in many cases that approach is not required. In 1978 the Department of Health and Human Services (which at the time housed the Social Security

Administration) promulgated the Medical-Vocational Guide-
lines. See 20 C.F.R. Part 404, Subpart P, Appendix 2. Those
Guidelines are often called "the Grids" because they take the
form of tables. See *id*. The three tables in the regulatory ap-
pendix apply to claimants limited to sedentary, light, and me-
dium jobs. See *id*. Each chart directs a finding—disabled or
not disabled—based on three work-related factors: the claim-
ant's age, education, and previous work experience. See *id*.;
see also *Cummins v. Schweiker*, 670 F.2d 81, 82–83 (7th Cir.
1982) (providing a detailed explanation of the regulations and
the operation of the Grids).

While the age and education factors in the Grids are
straightforward, previous work experience is a bit more com-
plicated. That factor, as it is incorporated into the Grids, re-
quires not only identifying the skill level of a claimant's past
work, but also deciding whether she has skills from past jobs
that can be transferred to other positions. See 20 C.F.R.
§ 404.1568(d)(1). If skills are not transferable to new jobs that
the claimant can perform, then even substantial previous
work history does not weigh in favor of a non-disabled find-
ing. See *id*. The transferability analysis is less searching for
older workers, because the Administration does not expect
claimants to change industries or work settings near the end
of their careers. See *id*. § 404.1568(d)(4).

A remand here would be futile because the Grids compel
a finding that Martin is disabled. Here is how the analysis pro-
ceeds under Table 2 (for people limited to light work) and Ta-
ble 1 (for sedentary work):

- *Age:* Martin falls into the "advanced age"
  category because she is over 55. See 20 C.F.R.
  § 404.1563(e).

- *Education:* Martin graduated from high school and cannot perform skilled work because her RFC limits her to unskilled work. See *id*. § 404.1568(a)-(c) (explaining skill levels).

- *Previous Work Experience:* The vocational expert considered Martin's past work to be semi-skilled. The agency's regulations state that those skills are not transferable to unskilled work. See *id*. § 404.1568(d).

With those attributes, the Grids direct a finding of disabled because Martin, as a result of her severe physical conditions, is limited to either light or sedentary work:

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 201.06 (sedentary work) | Advanced age | High school graduate or more—does not provide for direct entry into skilled work | Skilled or semi-skilled—skills not transferable | Disabled |
| 202.06 (light work) | Advanced age | High school graduate or more—does not provide for direct entry into skilled work | Skilled or semi-skilled—skills not transferable | Disabled |

20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.06, 202.06. While the Administration invites us to find that Martin can perform more than light or sedentary work—a proposition that, as we have emphasized, is not supported by substantial evidence—it agrees that the Grids would direct a disabled finding on the basis that we decide this appeal.

*   *   *

Eight years of proceedings have developed this record to the point of certainty: Martin's physical limitations leave her unable to perform any work above the light level. Given her restricted range of motion and symptoms of pain, light exertion would likely be a challenge for Martin because it requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). But we need not decide the precise scope of Martin's physical limitations because it does not change the outcome. Applying the Grids shows that Martin is disabled.

The vast majority of the time we will not award benefits and instead remand for further proceedings. But here the application of the Grids and the evidence developed in these prolonged proceedings combine to make Martin's entitlement to benefits clear. By our estimation, and mindful of the administrative guidance embodied in the agency's Program Operations Manual System, Martin's benefits award should begin on March 9, 2010—the day after her first of three applications was denied and not further challenged on appeal. The record shows that she has been eligible under the Grids since that date.

For these reasons, we REVERSE and REMAND with an instruction to award benefits.